## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SYLVIA DIFFENDRFER, ET AL

                                      CIVIL NO.  05-2244 (DRD)

        Plaintiff,

              v.

RAMÓN E. GÓMEZ-COLÓN EL AL

        Defendant

_____

**BRIEF**

**TO THE HONORABLE COURT**:

COMES NOW defendant, Ramón E. Gómez Colón, as president of the Puerto Rico State Election Commission and on his own behalf,  by and through undersigned counsel, and respectfully submits its Brief as ordered by the Court in its Order to Show Cause dated August 20, 2008:

The Puerto Rico Elections Commission (the "Commission") is composed of its President, the defendant  herein, who is its Executive officer (the "President") , and by four Electoral Commissioners representing each one of the four  political parties considered at the present time as a "principal political party" under the Electoral Law of Puerto Rico (the "Electoral Law"). [16 L.P.R.A. §3004.] Any one of its members may  file a motion for the approval by the Commission. [16 L.P.R.A. §3004.]  If such motion is not unanimously approved by the Commissioners, it shall be submitted to the President for his decision and his decision is deemed the decision of the Commission. [16 L.P.R.A. §3014.]    The alternate Commissioner of the New Progressive Party (one

of the four principal political parties at this time) filed a motion before the Commission requesting

that the ballots for the general election to be held in Puerto Rico on November 4, 2008, including

the voting instructions the same contain as required by the Electoral Law of Puerto Rico [16

L.P.R.A. §3211], be printed in both the Spanish and English languages.  The Commissioners were

not able to reach a unanimous decision with respect to the motion and the matter was referred to the

President for his decision.  By resolution dated July 31, 2008, notified on August 1, 2008, (case

number CEE-RS-08-48)  the President decided that the law did not require that the ballots for the

general elections, and the voting instructions contained therein, which have always been printed in

the Spanish language, be also printed in the English language.  The President based his  decision on

a prior decision to the same effect by his predecessor in 2004, which had not been appealed, after

determining that neither the circumstances nor the law had changed since then justifying a revision

of that prior decision.  The President's decision was not appealed and is now final and unappealable.

The contention of the New Progressive Party (the "NPP") before the Commission was that

a "significant segment" of the electorate in Puerto Rico qualified to vote [presumably meaning

United States citizens domiciled in Puerto Rico, who are or will be eighteen years of age or older on

election day, are not legally incapacitated and have registered to vote and have a voters identification

card [16 L.P.R.A. §§3052-3053)], although proficient in the English language, are unable to read or

understand Spanish adequately enough to participate in the electoral process and their voting rights

would, therefore,  be "endangered, restricted, or impaired, for not being able to fully and intelligently

exercise their rights in an informed manner", unless the ballot and the instructions therein are also

printed in the English language.[1] (¶5.2 of the verified complaint.)  The same contention is made by

the two plaintiffs in this case on their own behalf and on behalf of other members of a class in this

as of yet uncertified class action. Thus, the plaintiffs conclude that their rights under the equal

protection, the  substantive due process and privileges and immunities clauses of the United States

Constitution have been violated. Plaintiffs further assert that their rights under the First Amendment

of the US Constitution have also been violated.  In addition, in the Show Cause Order the Court

advises the parties that it would look to the Voting Rights Act of 1965 for other possible federal

remedies.

At this early stage of the proceeding  the remedies sought by the plaintiffs which the Court

could consider are a preliminary injunction addressed to the Commission or its members, defendants

herein, to stay "the bidding process, adjudication and printing of the ballots" until resolution of the

matter requested, and a further preliminary injunction requiring the Commission and/or its members

to provide ballots for the November 4 election in the English language as provided to Spanish

speaking voters. ( See (Prayer for Relief 4 and 5  of the Verified Complaint.)   To obtain a

preliminary injunction, the plaintiffs bear the burden of demonstrating (1) a substantial likelihood

of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3)

a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the

public interest. *McGuire v. Reilly*, 260 F.3d 36, 42 (1st Cir. 2001). It is the  defendants contention

---

[1]
Plaintiffs attach to their verified complaint a U.S. Census Report in support of their factual statement (¶4.2 of the verified complaint) that 14.4% of the residents of Puerto Rico understand only the English language. The attached page refers to persons 5 years or more of age.  This irrelevant.  The relevant statistic is persons 18 years or more, those that may vote. Further, on information and belief, the statistic offered is the answer by the head of the household to the question of what is the principal language spoken at home. A yes answer does not mean the persons residing there have a limited Spanish proficiency.

herein that the plaintiffs will not be able to show a substantial likelihood of success on any of their federal claims nor shall they be able to demonstrate potential irreparable harm if the preliminary injunctions requested are not granted.

Even though the Voting Rights Act of 1965 (the "Act") is not applicable, as will be shown, its provision are nevertheless relevant to demonstrate that the plaintiffs` rights under the U.S. Constitution have not been violated, even if they have a limited Spanish proficiency, because the ballots do not have the instructions printed in the English language.

In 1975, ten years after it was originally enacted, Congress enacted the language assistance provisions of the Voting Rights Act of 1975 ("the Act") to remove obstacles posed by illiteracy and lack of adequate bilingual language assistance for members of language minority groups. In order to enforce the guarantees of the fourteenth and fifteenth amendments to the U.S. Constitution, under Section 4(f)(4) of the Act Congress prohibited English-only elections and imposed on the "covered" states or political subdivisions a series of stringent provisions after finding that in such jurisdictions language minorities had been excluded from participating in the electoral process and subjected to acts of physical, economic and political intimidation. [42 U.S.C.§1973b(f)(1)][2]

Under §203 of the Act, Congress imposed less stringent provisions on other "covered" jurisdictions where lesser discriminatory problems existed against language minorities after further finding "that the denial of the right to vote of such minority group citizens is ordinarily related to the unequal educational opportunities afforded them, resulting in high illiteracy and low voting

---

2

 The "covered" states and political subdivisions had to meet certain requirements as determined by the Director of the Census and the U.S. Attorney General.  42 U.S.C. 1973b(b)

participation". [42 U.S.C. §1973aa-1a(a)]   It required that all voting materials, including ballots, be bilingual, in the language of the of the applicable minority group and in English, **but only if the illiteracy rate of the applicable language minority group is equal to or less than the national illiteracy rate**. "Illiteracy" is defined by §203 of the Act to mean the failure to complete the 5th primary grade. [42 U.S. §1973aa-1a(b)(2)(A)(ii)] "Language minorities" are defined as including only persons who are members of 4 groups: American Indian, Asian American, Alaskan natives and of Spanish heritage. [42 U.S. §1973aa-1a(e)] Language minorities are covered by §203 of the Act so long as the number of their members within the state or a political subdivision reaches the minimum amounts provided in §203.  However, only members who are "limited-English proficient" are counted to determine whether their numbers are sufficient to trigger the protection afforded by §203.   The term "limited-English proficient" means "unable to speak or understand English adequately enough to participate in the electoral process". [42 U.S. §1973aa-1a(b)(3)(B)]

Section 2 of the Act, among other provisions, was amended in 1975 to afford protection to language minorities.  The Act had afforded protection to racial minorities since its approval in 1965. Section 2(a) prohibits the imposition of a voting qualification or prerequisite or standard, practice, or procedure that **results** in a denial or abridgment of the right on account of race or color or because the person belongs to a language minority group.  Section 2(b) states that the test for determining the legality of such a "practice" is whether "based on the totality of circumstances, it is shown that the political processes leading  to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." (42 U.S.C. §1973) Thus, in an action under

Section 2 of the Act a plaintiff making the same claim plaintiffs make here would have to show, not only that the "practice" of printing the ballots in English resulted in a denial or abridgment of his/her right to vote simply because he/she are members of a language minority group, but also that they have less opportunity than the other members of the electorate to participate in the electoral process and to elect representatives of their choice.

Clearly, the Act does not apply in this case.  It only applies if the language minorities are American Indians, Asian Americans, Alaskan natives and of Spanish heritage.    If Plaintiffs are not of Spanish heritage [nor are they American Indians, Asian Americans or Alaskan natives] they are not covered by the Act.  If they are, they are still not covered by the Act.  The Act applies only if there are a sufficient number of limited English proficients within the language minority group who are also illiterate. Plaintiffs  admit they are not limited English proficient.  What they claim is the other way around.  Plaintiffs claim to be limited Spanish proficient.

Before considering plaintiffs' constitutional claims,  it must be emphasized that Puerto Rico, more specifically the Commission,  has not prevented the plaintiffs from registering as qualified voters.  They are registered voters.  Plaintiffs' contention is not that the state will physically prevent them from casting their ballot on election day nor that the state has intimidated them and as a result they are afraid to vote . If that were the case, it is clear that, not only that plaintiffs' constitutional right to vote would be violated, but in addition, a host of federal civil rights laws and Puerto Rico laws, including penal laws, would also be violated.

The question here is whether the Commonwealth of Puerto Rico, more specifically the Commission, has an **affirmative** obligation under the  federal constitution to provide a single registered voter with a ballot also printed in English because English is also an official language in

Puerto Rico[3] and such voter is limited Spanish proficient.  There are no federal cases to that effect.

However, it is submitted that the answer to that question is that the Commission is not obligated by

the federal constitution to **assist** an English speaking  registered voter who is limited Spanish

proficient by providing him/her a bilingual ballot.  Under such circumstances the state has not

deprived the voter of his constitutional right to vote.

It is further submitted that the federal constitutional obligation of language assistance in the

voting process on the part of the state only arises if the practice, in this case of monolingual ballots,

results in a denial or abridgment of their right to vote on account of their belonging to a language

minority group, and this practice discriminates against the language minority because they are not

able to effectively participate in the electoral process and vote for the candidate of their choosing.

This is the extent of the protection afforded by the Voting Rights Act to language minorities with

respect to language assistance in the voting process.  Thus, it is submitted that this is the extent of

the protection the federal constitution affords  English speaking minorities in Puerto Rico who are

limited Spanish proficient.

If the Act were  applied to this case by treating plaintiffs as members of a "language

minority",  their alleged limited Spanish proficiency as if they were limited English proficient, and

by assuming that the language of the majority is Spanish (not English) and that of the minority is

English (not Spanish), it is clear that  plaintiffs are not entitled to have the ballots and the

instructions contained therein also printed in English.

---

[3]

 It is respectfully submitted that the fact that English is also an official language in Puerto Rico is irrelevant
from the standpoint of the federal constitution and federal laws.  The meaning and effect of English being
an official language is a matter of local law.

In order to merit such constitutional protection plaintiffs would have to show, at a minimum, that the "practice" of using ballots in Spanish-only has **resulted** in a denial or abridgment of their right to vote on account their belonging to a language minority group. To show this, they have to demonstrate that they have less opportunity than the other members of the electorate to participate in the electoral process and to elect representatives of their choice. In essence, they have to show that that they have been discriminated upon. This showing is indeed heightened in their case because plaintiffs are presumably educated persons. This makes it hard to believe that their proficiency in Spanish is so limited that they are simply not able to vote unless the instructions are in English. Thus, plaintiffs will not be able to show a substantial likelihood of success on any of their federal claims show a substantial likelihood of success on any of their federal claims.

More importantly, however, is the fact that they cannot show that they will suffer an irreparable harm if the injunction is not granted and as a result the ballots remain in the Spanish language. They cannot show such irreparable harm because they cannot show that they will not be able to vote for the candidates of their choice if the ballots and instructions therein are in the Spanish language.

The voting system in Puerto Rico is a document ballot voting system. It is a straightforward system, basically foolproof. It does not require that elaborate instructions be printed on the ballot telling the voter how to vote.

First, contrary to the ballots used in the United States, where the party insignias or symbols identifying them are not displayed on the ballot, and the candidates' photograph does not appear on the ballot, in Puerto Rico the insignias of all of the political parties are prominently displayed on the ballot and a photograph of each candidate appears opposite his/her name. This means that the voter

may be illiterate, and not be able to read the name of the parties or candidates as they appear written on the ballot, but he/she is still able to identify and select the party by its insignia and the candidates by his/her photograph.

The two plaintiffs, and presumably the rest of the class if it were certified, admit they are proficient in the English language, which means that they are educated. They are better off than the illiterates even if the parties insignias and the candidates photographs were not displayed on the ballot. They can still read the candidates names even if they are Hispanic names. Most names cannot be translated to English anyway and one has to assume that plaintiffs are familiar with the candidates' names for whom they want to vote even if they are Spanish names. They can also read and understand the position for which the person nominated is running, even if such positions are referred to in Spanish. The English and Spanish alphabet is the same. The Spanish language is written as it sounds. If plaintiffs can read English they can read Spanish and understand the position for which each candidate is running even if it is expressed in Spanish. The Spanish word for the position sounds the same as the English word: i.e. "gobernador" and "governor", "comisionado residente" and "resident commissioner", "representante" and "representative", and "senador" and "senator". Therefore, even if plaintiffs cannot read Spanish, they should have no trouble identifying the party or candidates for whom they want to vote and need not have instructions in English to make their selection.

Second, as to the manner of making a selection and voting for a party's slate of candidates or for individual candidates, the document ballot voting system is also straightforward. To make the selection it only requires that the voter make a handwritten mark, an X for example, under the party insignia or within the box in which the candidate's name, photograph and position for which he/she

is running appears.  This is evident.  For an educated voter, which is plaintiffs' case, to say that he/she was unaware that the way to vote is to make a handwritten X mark underneath the party's insignia, or within the box where the candidates name, position and photograph appears, because he/she is not able to read Spanish, deserves no credibility.

The system used in Puerto Rico does not require voters to punch holes to make their selection which may require further instructions.  Even then, however, an educated  voter's failure to properly punch the ballot cannot be attributed to the fact that the voter was not able to read the language in which the ballot was printed.

In addition, no voting machine or voting equipment is required in the document ballot voting system as would be the case if it were a non-document ballot voting system.  A non-document ballot system, which is the system that prevails throughout the United States, requires voting machines or voting equipment  to view the ballot, and allow the voter to indicate the voter's selection and to verify his/her selection.  This requires elaborate instructions on how to vote, which is not the case in Puerto Rico.

Third, the fact that the instructions on the ballot as to the four ways a voter can vote are printed in Spanish, does not deprive an educated English speaking person who does not read Spanish from his/her right to vote.

There are three separate ballots for the coming elections, which has also been the case for recent past elections. First, a ballot for the election of governor and resident commissioner.  Second, a ballot for the election of legislators. Specifically, the election of a representative to the House of Representative for the corresponding district, the election of two senators for the Senate for  the

corresponding  district; and the election of one representative at-large and one senator at-large from a list of candidates nominated by each party. Third, the municipal ballot for the election of mayor and municipal legislators.

The ballot for the election of governor-resident commissioner and the municipal ballot have five columns.  The insignia of one of the four political parties appears at the top of each the first four columns. The names of the candidates, photos and positions for which he/she are nominated by his/her party appear in the column below the insignia of the party that nominates them.   The fifth column is the write-in column and has a blank space for each position to  write-in the name of the voter's  nominee  for  that  position. The  legislative ballot  has  an  additional  sixth  column  for independent candidates for which there is only one for senator at-large.

The instructions appearing on each of the ballots relate to the four ways a voter can vote.  A straight vote ("voto íntegro") means  an X marked under the insignia of a party. Such voter has voted for the full slate of candidates nominated by such party appearing in the column below the party's insignia.   A  caveat  is  made  in  the  legislative  ballot. Since  the  voter  may  only  vote  for  one representative at-large and one senator at-large, and the two principal parties nominate more than one  candidate  for  such  positions,  a  straight  vote  means  that  the  voter  is  voting  for  the  at-large representative and the at-large senator appearing first in the list of nominees for such positions in the column below the party's insignia.

A "mixed vote" ("voto mixto") means an X marked under the insignia of a party and another X marked opposite the name of a candidate(s) appearing in a column under the insignia of another party  or  a candidate's name written in under the write-in column. In such cases, the vote was for all candidates in the column under the party's insignia, except for those candidates that the voter

voted for their opponent who appeared in the same line in another column.   It is also a mixed vote if the voter  marked an X under the insignia of a party, and another X for the at-large representative or senator candidate appearing under the same column but not the first one in the list. The vote was for that candidate for legislator at-large and not for the candidate appearing first in the list.

A vote for candidates ("candidaturas") should not present any problem either for the limited Spanish proficient voter.  It simply means that the voter does not vote under a party's insignia y requires the voter to place a mark opposite the name of the candidate he/she is voting for.

The write-in vote should likewise  present no problem for the limited Spanish proficient voter. The ballot indicates in English at the top of the corresponding column that it is the write-in column.

In Puerto Rico almost all of the votes cast are cast by a straight ballot marked by an X below the insignia of the party. A limited Spanish proficient voter does not require that the instructions be in English to vote a straight ballot. The same can be said of a writer-in vote.  If such a voter were to vote a mixed ballot or by candidates, it would seem that his/her decision for whom to vote is not made in the voting booth after the ballot is given to him/her.  If this decision is made earlier, an educated voter can obtain a sample ballot in the press, in the Commission's webpage or however and make sure how to make his/her selection without voiding the ballot. It does not appear to be complicated at all for an educated persona to vote a mixed or by candidate ballot even if the person is limited Spanish proficient.

Under the Puerto Rico election Law, a voter is entitled to receive assistance from any of the inspectors representing the political party at the voting place. [16 L.P.R.A. §3329] In addition,  for the next elections the Commission will display in a conspicuous way in each voting place the

instructions appearing in the ballot in English.  English speaking voters who are limited Spanish proficient have the assistance required so that they con vote properly and should have no problems in voting.

This is the first time the Commission has received a complaint from a limited Spanish proficient voter that he will be deprived of his/her right to vote if the ballot is not also printed in English. The Commission does not believe that such is the case nor does it understand that it is constitutionally bound to provide bilingual ballots under these circumstances.  However, as stated before, the Commission will display in a conspicuous way in each voting place the instructions appearing in the ballot in English.

Approximately 13M ballots will be printed.  Eleven million will be the official ballots to be used by the voters to vote printed in so called security paper, and 2 million will be sample ballots so marked printed in another type of paper.  There will be approximately 7,000-8,000 polling places, 110 precincts and 78 municipalities.   The governor-resident commissioner ballot is uniform throughout.  The legislative ballot is different for each of the 110 predicts.  The municipal ballot for each of the 78 municipalities is different.

At this date, the design for the different ballots has been made, the contract for the printing of the ballots has been awarded and the paper for the printing of the ballots has been purchased. Political parties have until September 5, 2008 to announce changes requiring a change in the ballot. The absentee ballots must be mailed on or before September 25, 2008, The form of ballots mailed to absentee voters are the same as those used by voters on election day. This means that the printing of all of the ballots should have been substantially accomplished by September 25, 2008. This in turn means that printing must commence on September 6, 2008.

It is not possible at this late date to have bilingual ballots ready for election day.  Bilingual ballots require an increase in the size of the ballot to accommodated the instructions in English.  The Commission has inquired and its contractor has informed that the additional paper required cannot be delivered in time  to have the ballot printed by September 25, 2008.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on August 27, 2008

I hereby certify that on August 27,2008, I electronically filed the foregoing with the Clerk of the Court using the CM-ECF system which will send notification of such filing to Claudio Aliff Ortiz, Michael C. McCall and Simone Cataldi Malpica, counsel for plaintiffs.


/s/Noel S. González Miranda

Noel S. González Miranda

USDC-PR 114108

Counsel for Ramón E. Gómez Colòn, defendant.

**González Miranda & González Abella P.S.C.**

Midtown Building, Suite 904

421 Muñoz Rivera Avenue

San Juan, P.R. 00918

Tel. (787) 767-9494, Fax (787) 281-6585

e-mail ngm@gmgalaw.com