## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

_____

### Civil No. 08-1918 (JAF)

_____

**SYLVIA DIFFENDERFER, ROBERT McCARROLL,** *on behalf of themselves and as representatives of the class herein defined*

*Plaintiffs*

v.

**RAMON E. GOMEZ-COLON,** individually and in his official capacity as President of the State Election Commission of the Commonwealth of Puerto Rico; **GERARDO A. CRUZ-MALDONADO**, individually and in his official capacity as Electoral Commissioner of the Popular Democratic Party; **JUAN DALMAU-RODRIGUEZ**, individually and in his official capacity as Electoral Commissioner of the Puerto Rican Independence Party; **NELSON ROSARIO-RODRIGUEZ**, individually and in his official capacity as Electoral Commissioner of the Puerto Ricans for Puerto Rico Party; **EDWIN MUNDO-RIOS**, individually and in his official capacity as Electoral Commissioner of the New Progressive Party; **WALTER VELEZ-RODRIGUEZ**, individually and in his official capacity as Secretary of the State Election Commission of the Commonwealth of Puerto Rico; **THE JOHN DOE DEFENDANTS**, a fictions name for defendants whose identity is unknown at this time

*Defendants*

_____

### PLAINTIFFS' BRIEF

1

# TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................2

**JURISDICTION AND VENUE** ...........................................................................3

**FACTUAL BACKGROUND** .................................................................................3

**ARGUMENTS** .........................................................................................................5

    *A.*    *Federal Intervention in the State Electoral Process is Warranted*.............................5

          *i.*   *The historical policy, custom, or usage to print electoral ballots solely in the Spanish language unequally disenfranchises plaintiffs* ....................5

         *ii.*   *The lack of compelling or* any valid reasons *to unequally deprive plaintiffs of their fundamental right to vote does not survive a strict scrutiny analysis* .........................................................................................8

    *B.*    *Plaintiffs' Request for a Preliminary Injunctive Relief* ...........................................12

          *i.*   *Plaintiffs Have Shown a Strong Likelihood of Success on the Merits of their Claims*....................................................................................................12

         *ii.*   *Plaintiffs Will Suffer Irreparable Injury if a Preliminary Injunction is not Granted*....................................................................................................25

        *iii.*   *When Balancing the Equities, the Harm to Plaintiffs if Preliminary Injunctive Relief Protecting the Exercise of their Fundamental Rights is Denied Far Exceeds any Unarticulated Harm to Defendants if a Preliminary Injunction is Granted.* ......................................................26

        *iv.*   *The Public Interest Supports Granting Injunctive Relief and Protecting Plaintiffs' Exercise of Fundamental Constitutional Rights.* .................28

    *C.*    *The Class Herein Should be Certified Accordingly* ...................................................29

          *i.*   *Numerosity of Members* ......................................................................................31

         *ii.*   *Commonality of One or More Questions of Law or Fact*......................31

        *iii.*   *Typicality of Representative Claims or Defenses* ...................................32

        *iv.*   *Adequacy of Representation* ...........................................................................33

         *v.*   *Rule 23(b)Requirements*...................................................................................34

**WHEREFORE** .......................................................................................................35

# TABLE OF AUTHORITIES

## Federal Statutes

28 U.S.C. §§ 1331, 1343, 2201, and 2202 ...............................................................................3

28 U.S.C. §1391 (b) .................................................................................................................3

42 U.S.C. § 1983 .....................................................................................................................8

42 USCA §1988 .....................................................................................................................44

Due Process Clause................................................................7,8,14,17,23,25,31,32

Equal Protection Clause ........................................ 7,8,10,11,12,14,23,24,25,32,31

Fifth Amendment .......................................................................2,12,17,25,27,29,35,40

First Amendment .........................................2,8,11,12,17,19,20,22,29,35,40,44

Fourteenth Amendment..............................2,8,10,12,17,19,24,25,29,32,35,40,44

HAVA Act.................................................................................................................4

## State Statute

PR ST T. 16 § 3004................................................................................................3

PR ST T. 16 § 3013................................................................................................4

PR ST T. 16 § 3014................................................................................................4

PR ST T. 16 § 3053..............................................................................................15

PR ST T. 16 § 3211................................................................................................3

Puerto Rico Federal Relations Act, 48 U.S.C. § 737 ...........................................20

## Cases

*Anderson v. Celebrezze,* 460 U.S. 780, 787 n.7 (1983) ......................... 10, 14, 15, 22

*Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 131-32 (1st Cir. 1985) ..............31, 33

*Arnaud v. Odom*, 870 F.2d 304, 310-311 (5th Cir. 1989).........................................15

*Auburn News Co., Inc. v. Providence Journal Co.*, 659 F.2d 273, 277 (1st Cir. 1981) ..............23

*Ayers-Schaffner v. DiStefano*, 37 F.3d 726, 731 (1st Cir.1994)................................. 10, 13, 18, 22

*Battle v. Munic. Housing Auth. for City of Yonkers*,  53 F.R.D. 423, 424, 427, 429 (S.D.N.Y. 1971).................................................................................................25

*Bonas v.Town of North Smithfield*, 265 F. 3d 69, 74 (1st Cir. 2001) ........................ 6,7,8,13,18,19

*Boustani v. Blackwell*, 460 F.Supp.2d 822, 827 (N.D.Ohio 2006)..............................................24

*Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 949, 31 L.Ed.2d 92 (1972) .........................................7

*Burdick v. Takushi*, 504 U.S. 428 (1992) ................................................................ 9,10,13,18,22

*Cardona v. Oakland Unified School District, Calif.*, 785 F.Supp. 837, (N.D.Cal. 1992).......23, 24

*Cerezo v. Rivera Quiñones*, 1990 WL 29796 at p.*3 (D.P.R. March 9, 1990) ...........................14

*City of Mobile Alabama v. Bolden*, 446 U.S. 55, 77 (1980)........................................................19

*Colorado Republican Federal Campaign Comm. v. F.E.C.*, 518 U.S. 604, 616 (1996) ..............14

*Common Cause/Georgia v. Billups*, 439 F.Supp. 2d 1294 (N.D.Ga. 2006) ................................24

*Commonwealth et al. v. M/V Emily S et al.*, 158 F.R.D. 9, 12 (D.P.R.1994)..............................30

*Cruz v. Melecio*, 204 F.3d 14, 22 (1st Cir. 2000) ...................................................... 9,10,18,21,22

*Davis v. Weir*, 497 F.2d 139, 146-47 (5th Cir. 1974) .................................................................32

*Deja Vu of Nashville, Inc. v. Metro. Govt. of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001).........28

*Dillard v. Crenshaw County*, 640 F.Supp. 1347, 1363 (M.D.Ala. 1986) ...................................24

*Doe v. Rowe*, 156 F.Supp.2d 35, 47-48 ....................................................................................19

*Dunn v. Blumstein*, 405 U.S. 330, 336 (1972)...........................................................................19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)......................................................30

*Ex Parte Young*, 209 U.S. 123 (1908)..................................................................................2, 35

*Fuentes v. Shevin*, 407 U.S. 67, 94-96 & n. 31, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).............32

*Gour v. Morse*, 652 F.Supp. 1166, 1168, 1173 (D.Vt. 1987)....................................................25

*Griffin v. Burns*, 570 F.2d 1065, at 1074 (1st Cir. 1978)...................................5,6,7,8,18,24,32,33

*Harper v. Va. Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)...........19,26

*Harris v, Cruz*, 710 F.Supp. 29, 31 (D.P.R. 1989) .......................................................29

*Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) ..............................................6

*Henry v. Connolly*, 910 F.2d 1000, 1003 (1st Cir. 1990).................................................6

*Henry v. Greenville Airport Commission*, 284 F.2d 631 (4th Cir. 1960) ....................................25

*Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)..........................13

*Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir. 1978) ........................34

Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)................................32

*K-Mart Corp.  v. Oriental Plaza, Inc.*, 875 F.2d 907, 914-916 (1st Cir. 1989) ............ 12,23,26,28

*Kramer v. Union Free School*,  395 U.S. 621, 626 (1969)..........................................26

*L.P. Hurd, supra,* at 238........................................................................32

*Limpieza Cuidadana v. Gracia*, 283 F.Supp.2d 469, 481 (D.P.R. 2003) .........9,13,14,15,18,21,26

*Madden v. Commonwealth of Kentucky*, 309 U.S. 83, 90-91 (1940)..........................................20

*Makuc v. American Honda Motor Co. Inc.,* 835 F.2d 389, 394 (1st Cir.1987)..........................29

*Mick v. Ravenswood Aluminum Corporation,* 178 F.R.D. 90, 92 (S.D.Va.1998)........................32

*Miller v. Blackwell*, 348 F.Supp. 2d 916, 920-922 (S.D.Ohio) ....................................25

*NAACP v. Alabama*, 357 U.S. 449, 460 (1958)........................................................14

*Naser Jewelers, Inc. v. City of Concord, N.H.*, 513 F.3d 27, 32 (1st Cir. 2008)........... 12,23,26,28

*New Progressive Party v. Hernández Colón*, 779 F.Supp. 646, 656 (D.P.R. 1991) ...................13

*Norman v. Reed*, 502 U.S. 279, 289 (1992) .......................................... 10, 14, 18, 22

*Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920, 937 (2d Cir. 1968)..............32

Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 307, 57 S.Ct. 724, 81
    L.Ed. 1093 (1937) ............................................................................32

*Palko v. Connecticut*, 302 U.S. 319, 324-325 (1937) ...................................................14

*Partido Nuevo Progresista v. Perez*, 639 F.2d 825, 828.............................................6

*Phoenix v. Kolodziejski,* 399 U.S. 204, 209, 90 S.Ct. 1990, 1994, 26 L.Ed.2d 523 (1970)........5,7

*Piccolo v. New York City Campaign Finance Board*, 2007 WL 2844939 (S.D.N.Y. Sept. 28, 2007)....................................................................................................10

*Public Service Company of New Hampshire v. Town of West Newbury,* 835 F.2d 380, 382 (1st Cir. 1987)...............................................................................23

*Puerto Rican Organization for Political Action v. Kusper*, 490 F. 2d 575, 580 (7th Cir. 1973) .....5

*Puerto Rico Conservation Foundation v. Larson*, 797 F.Supp. 1066, 1071 (D.P.R. 1992) .........23

*Reynolds v. Sims,* 377 U.S. 533 (1953) ................................................... 5,7,13,18,21

*Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 75 (1st Cir. 2005) .... 23,26,28

*Rodríguez*, 457 U.S. at 10..........................................................................19

*Rossello v. Calderon*, 398 F.3d 1, 15 (1st Cir. 2004) ...............................................6,7

*Senter v. General Motors Corp.*, 532 F.2d 511, 523-25 (6th Cir.) ...............................32

*Shannon v. Jacobowitz,* 394 F. 3d 90 (2d Cir. 2005).................................................5

*Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)..................................................14

*Spencer v. Blackwell*, 347 F.Supp. 2d 528, 533-534, 537-538 (S.D.Ohio)..........................28,32

*Swanson v. Bennett*, 219 F.Supp. 2d 1225, 1226, 1233-1234 (M.D.Ala. 2002) ........................25

*The Florida Democratic Party v. Hood*, 342 F.Supp.2d 1073, 1082 (N.D.Fla. 2004)................24

*The Slaughter-House Cases*, 83 U.S. (16 Wall) 36, 73-80 (1872) ..............................20

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ........................... 10, 15, 22

*U.S. Term Limits, Inc. v. Bryant*, 514 U.S. 779, 843-844 (1995) .................................20

*Warren v. City of Athens, Ohio*, 411 F.3d 697, 711-712 (6th Cir. 2005)....................................25

*Weiss v. York Hospital,* 745 F.2d 786, 808-09 (3d Cir. 1984) ...................................31

*Werme v. Merrill*, 84 F. 3d 479 (1st Cir. 1996)............................................................9

*Wesberry v. Sanders,* 376 U.S. 1, 17 (1964) .......................................................13,18

*West Virginia State Bd. of Ed. v. Barnette*, 319 U.S. 624, 638-639 (1943) .................................14

*Wilensky v. Olympic Airways*, 73 F.R.D. 473, 475 (E.D.Pa.1977)..............................................30

*Williams v. Rhodes*, 393 U.S. 23 (1968) at 31.........................................................9,14,15,21,26

*Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886) .................................................5,13,18

## Other Authorities

3B *Moore's Federal Practice* para. 23.06-1 at 23-159 to 23-160 (2d ed. 1987).........................31

4 Rotunda & Nowak, *Treatise on Const. L.* § 18.31(a) (4th ed. 2008)..........................9,10,20,22

7A Wright and Miller, *Federal Practice and Procedure, Civil*: s 1775 at 21 (1972) ............32, 34

11A Wright, Miller & Kane, *Fed. Prac. & Proc. Civ.* 2d §2948.1 (2008).................................25

Wright, Miller & Kane treatise states .......................................................................25

## Rules

Rule 23(a) of the Federal Rules of Civil Procedure........................................................30,31,35

Rule 23(b) of the Federal Rules of Civil Procedure........................................................30,33,34

## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF PUERTO RICO

| | |
|---|---|
| SYLVIA DIFFENDERFER,<br>ROBERT McCARROLL,<br>*Plaintiffs on behalf of themselves and as*<br>*representatives of the class herein defined* | Civil No: 08-1918  (JAF) |
| | CLASS ACTION FOR: |
| vs. | |
| | CIVIL RIGHTS<br>DECLARATORY JUDGMENT<br>INJUNCTIVE RELIEF, AND<br>NOMINAL DAMAGES |
| RAMON E. GOMEZ-COLON, individually and<br>in his official capacity as President of the State<br>Election Commission of the Commonwealth of<br>Puerto Rico; GERARDO A. CRUZ-<br>MALDONADO, individually and in his official<br>capacity as Electoral Commissioner of the<br>Popular Democratic Party; JUAN DALMAU-<br>RODRIGUEZ, individually and in his official<br>capacity as Electoral Commissioner of the Puerto<br>Rican Independence Party; NELSON ROSARIO-<br>RODRIGUEZ, individually and in his official<br>capacity as Electoral Commissioner of the Puerto<br>Ricans for Puerto Rico Party; EDWIN MUNDO-<br>RIOS, individually and in his official capacity as<br>Electoral Commissioner of the New Progressive<br>Party; WALTER VELEZ-RODRIGUEZ,<br>individually and in his official capacity as<br>Secretary of the State Election Commission of the<br>Commonwealth of Puerto Rico; THE JOHN DOE<br>DEFENDANTS, a fictions name for defendants<br>whose identity is unknown at this time<br>        *Defendants* | |

## PLAINTIFFS' BRIEF

**NOW COME THE PLAINTIFFS**, through the undersigned attorneys and respectfully

state and pray:

1

## INTRODUCTION

The present class action for declaratory judgment, injunctive relief and nominal damages-
-authorized under the Civil Rights Act of 1871 (42 U.S.C. § 1983) and the doctrine of *Ex Parte Young,* 209 U.S. 123 (1908)--arises under the First, Fifth and Fourteenth Amendments to the United States Constitution. It responds to the Puerto Rico State Election Commission's determination to provide electoral ballots—and the instructions which by law are required to be printed therein--solely in the Spanish language. A decision, which capriciously, and unequally, excludes (disfranchises), treats, and impedes an effective vote, of a class of qualified voters who are of limited Spanish proficiency (do not speak, read or understand the Spanish language, but rather speak, read and understand English) without any compelling reason proffered on their part--to draw such lines between a vast number of the qualified electorate and impede their desire to enfranchise and/or effectively participate in the democratic process.

The named plaintiffs and the class they represent are challenging the policy, custom and/or usage established by the State Election Commission to print the electoral ballots for General Elections in Puerto Rico, as well as the instructions therein, **solely** in the Spanish language without any compelling sate reason to do so, thus, unequally and unjustifiably excluding a significant percentage of the qualified electorate. Such conduct deprives the plaintiffs of their fundamental right to vote in contravention to the First, Fifth and Fourteenth Amendments to the United States Constitution.

Moreover, it not only deprives a group of qualified voters of their fundamental rights to enfranchise, vote freely (and effectively), and be treated equally within the democratic society on which they live but, furthermore, risks and endangers their right to have their votes invalidated,

2

because—contrary to the general population--they would not be able to follow the instructions in the ballot, where a deviation from the same invalidates a vote.

## JURISDICTION AND VENUE

Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1343, 2201, and 2202. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b), because all parties are located in this district, and the acts complained herein occurred in this district.

## FACTUAL BACKGROUND

On April 16, 2008, a meeting was held amongst the Electoral Commissioners[1] (herein referred to as "the Commissioners'") of the different political parties which are registered to participate in the upcoming General Elections to be conducted on November 4, 2008 (herein referred to as "the General Elections"). During the meeting, the Commissioners engaged in a discussion regarding the language in which the electoral ballots for General Elections–and the instructions required by law to be printed on its face--are to be printed on. [2]

The issue arose given the concern of the alternate Electoral Commissioner of the New Progressive Party, Mr. Enrique Melendez-Ortiz ("Melendez"), that by publishing the ballots--and the voting instructions--only in the Spanish language, a significant segment of the electorate, duly qualified to vote, which do not speak, read, understand and/or are proficient in Spanish (but do use, speak and understand English), would be disfranchised and/or would have their voting rights endangered, restricted, and/or impaired, thus, not being able to fully and efficiently exercise their rights. The other Commissioners refused. Meanwhile, Mr. Gerardo Cruz ("Cruz"),

---

[1] The State Election Commission which "shall be composed of a Chairman, who shall be its Executive Officer, and an Electoral Commissioner representing each of the principal political parties, parties by petition or coalesced parties, is hereby created." PR ST T. 16 § 3004.

[2] *See*: PR ST T. 16 § 3211 ("Instructions as to the matter of voting shall be printed on each ballot.")

the Commissioner for the Popular Democratic Party, requested time to consult with his party about the issue, after which, he refused.

To establish electoral policy,[3] the decisions of the Commissioners, regarding any matter, must be made in a unanimous fashion. If that is not the case—that the commissioners cannot reach a unanimous decision--the matter is referred to the President of the Commission for his ultimate resolution.[4] Given that the Commissioners were unable to reach a decision regarding the ballot language, the matter was submitted to the President of the Commission for his ultimate resolution.

The President of the Commission was requested at least twice to solve this issue expeditiously. Nevertheless, even though appraised of the adverse effects of not providing ballots to a qualified segment of the voting population which could arise, decided the matter three and a half months later --by way of a resolution dated July 31, 2008, and notified on August 1st, 2008. The conclusion reached at Resolution CEE-RS-08-48 was that "we do not find any changes in the facts or in the law that prompt us to modify" previous [r]esolution CEE-RS-04-43 passed in 2004 determining that there was **no legal obligation** – under the HAVA Act- to provide voting materials [electoral ballots] in Spanish and English.[5]  Accordingly, the ballots for the November 4, 2008 Elections are to be printed **_solely_** in the Spanish language, instead of a bilingual format.

The bid for printing the ballots took place on August 12, 2008. The same was adjudicated on August 22, 2008; and printing of the ballots is scheduled to commence on September 10, 2008.

---

[3]   The State Elections Commission shall be responsible for planning, organizing, structuring, directing and supervising the electoral body and all electoral procedures that govern any election to be held in Puerto Rico, pursuant to this subtitle and its regulations. PR ST T. 16 § 3013.

[4]   *See*: PR ST T. 16 § 3014.

[5]   See Exhibits 1 and 2.

4

**ARGUMENTS**

**D.   *Federal Intervention in the State Electoral Process is Warranted***

> **i.   *The historical policy, custom, or usage to print electoral ballots solely in the Spanish language unequally disenfranchises plaintiffs***

"Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted." *Reynolds v. Sims,* 377 U.S. 533, 554 (1953) (internal citations omitted); *See also: Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886) (The right of suffrage is "a fundamental political right, because [it is] preservative of all rights."); *Phoenix v. Kolodziejski,* 399 U.S. 204, 209, 90 S.Ct. 1990, 1994, 26 L.Ed.2d 523 (1970) (The Constitution "does not permit [...] the exclusion of otherwise qualified persons from the franchise."); *Griffin v. Burns,* 570 F.2d 1065, at 1074 (1ˢᵗ Cir. 1978) (It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted[.]") (internal citations omitted); *Puerto Rican Organization for Political Action v. Kusper,* 490 F. 2d 575, 580 (7ᵗʰ Cir. 1973) ("[T]he 'right to vote' encompasses the right to an effective vote.").

Federal courts can intervene in State electoral disputes and federal intervention is warranted in this case. Particularly, when the same does not fall into the 'garden variety of electoral irregularities,' [6] but rather "bespeaks the violation of a constitutionally guaranteed

---

[6]   Examples of such 'garden variety' irregularities as identified by the federal courts include: malfunctioning of voting machines; human error resulting in miscounting of votes and delay in arrival of voting machines; allegedly inadequate state response to illegal cross-over voting; mechanical and human error in counting votes; technical deficiencies in printing ballots; mistakenly allowing non-party members to vote in a congressional primary; and arbitrary rejection of ten ballots, *Shannon v. Jacobowitz,* 394 F. 3d 90 (2d Cir. 2005) (internal citations omitted);

right." *Rossello v. Calderon*, 398 F.3d 1, 15 (1ˢᵗ Cir. 2004). After all, "[t]he Federal Constitution protects the right of qualified citizens to vote in local elections." *Id*. "The right to vote remains, at bottom, a federally protected right. If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under §1983 therefore in order. Such a situation must go well beyond the ordinary dispute over the counting and marking of ballots; and the question of the availability of a fully adequate state corrective process is germane. But there is precedent for federal relief where broad-gauged unfairness permeates an election, **even if derived from apparently neutral action**." *Griffin*, 570 F.2d at 1077 (emphasis added); *See also: Bonas v.Town of North Smithfield*, 265 F. 3d 69, 74 (1ˢᵗ Cir. 2001) ("It is our task, then, to separate wheat from chaff, and to determine whether this case fits into one of the isthmian exceptions to this general rule of non-intervention. The first, and most developed, justification for federal court intervention exists **when a discrete group of voters suffers a denial of equal protection**." (emphasis added)).

In *Griffin*, the First Circuit set forth the analytical framework to evaluate when an electoral dispute bespeaks the violation of a constitutionally guaranteed right and, thus, federal court could exercise jurisdiction over the same. *See: Rossello,* 398 F.3d at 15 ("[A]s this Court

---

"a determination to enfranchise voters," *Partido Nuevo Progresista v. Perez*, 639 F.2d 825, 828; and, an interpretation of a voter's intent under state law. *See: e.g Rossello v. Calderon*, 398 F.3d 1, 15 (1ˢᵗ Cir. 2004). See also: *Bonas*, 265 F. 3d at 74-75. "Although some subsequent cases have distinguished *Griffin*, *see*, *e.g.*, *Henry v. Connolly*, 910 F.2d 1000, 1003 (1st Cir. 1990) (distinguishing *Griffin* in respect to the scuttling of a ballot initiative for failure to comply with state-law signature prerequisites); *Partido Nuevo Progresista v. Perez*, 639 F.2d 825, 828 (1st Cir. 1980) (distinguishing *Griffin*, in a ballot mismarking case, on the ground that the claimed injury was indirect vote dilution as opposed to direct disenfranchisement), none have weakened its core holding: that, in those few cases in which organic failures in a state or local election process threaten to work patent and fundamental unfairness, a colorable claim lies for a violation of substantive due process (and, hence, federal jurisdiction attaches). Other courts also have struggled with plotting the boundaries of federal jurisdiction in this area, but, in the main, have adhered (at least approximately) to *Griffin*'s core holding. *See*, *e.g.*, *Marks v. Stinson*, 19 F.3d 873, 888-89 (3d Cir. 1994) (citing *Griffin* and decertifying the winner of a local election in the face of massive absentee ballot fraud); *see also Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (suggesting that "wilful conduct which undermines the organic processes by which candidates are elected" may violate the constitutional right to vote)." *Bonas*, 265 F. 3d at 74-75

implied in *Barreto Pérez,* there is a heavy presumption in favor of non-intervention if the party requesting intervention **cannot** show **that a discrete group of voters has been disenfranchised by the challenged local action.**" (Emphasis added)). By the same token, if it can be shown **that, by way of a state policy or custom, a discrete group of voters has in fact been disenfranchised, denied its vote, or have their voting rights restricted by the challenged local action without affording them the constitutional guarantees of the First and Fourteenth Amendments**—there is **no** impediment for federal courts to intervene and a §1983 case is proper. <u>See</u> *e.g.* <u>Griffin</u> 570 F. 2d at 1077 ("If the election process itself reaches the point of patent and fundamental unfairness, a violation of the <u>due process clause</u> may be indicated and relief under §1983 therefore in order."; and <u>Bonas</u> 265 F. 3d at 74 ("The first, and most developed, justification for federal court intervention exists **when a discrete group of voters suffers a denial of <u>equal protection</u>**." (emphasis added)).

The Court determined that "[f]ederal court intervention into the state's conduct of elections for reasons other than racial discrimination has tended, for the most part, to be limited to striking down state laws or rules of general application which improperly restrict or constrict the franchise, see, e. g., <u>Bullock v. Carter</u>, 405 U.S. 134, 92 S.Ct. 949, 31 L.Ed.2d 92 (1972) (rejecting candidate filing fees); <u>Harper v. Va. Bd. of Elections</u>, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (rejecting poll taxes); *Reynolds v. Sims*, supra (rejecting geographical restrictions); *Phoenix v. Kolodziejski*, supra (rejecting limitation of franchise to property holders)." <u>Griffin</u>, 570 F.2d at 1076. As the <u>Rossello</u> Court concluded: "[i]n *Griffin v. Burns,* **this Court determined that federal intervention into a state election was appropriate where a significant percentage of the qualified and voting electorate was, in effect, <u>denied its vote</u>.**" <u>Rossello,</u> 398 F.3d at 16 ("In *Bonas,* this Court held that complete disenfranchisement of all

voters, by a municipality's decision not to hold a municipal election at all, warranted federal intervention."); *compare with*: *Partido Nuevo Progresista v. Pérez*, 639 F.2d 825, at 828 (In which, unlike *Griffin* and *Bonas*, where the disputed local actions involved the disenfranchisement of a discrete group of voters, the local action at issue **did** "**not** involve a state court order that disenfranchise[d] voters; rather it involve[d] a Commonwealth decision that en franchise[d] them.")

Undoubtedly, a case such as the one presently before the court, in which a class of qualified voters has been deprived of their federally protected fundamental constitutional rights without any compelling state reason to do so--in violation of the constitutional protections secured by way of the Fourteenth Amendment--can also be characterized as harbingers of patent and fundamental unfairness which amounts to a federal constitutional violation and, thus, warrants federal intervention to be analyzed under a strict scrutiny lens.

> ## ii. The lack of compelling or *any valid reasons* to unequally deprive plaintiffs of their fundamental right to vote does not survive a strict scrutiny analysis

"Besides the explicit constitutional provisions that pertain to the election process, **the Supreme Court has held that the Fourteenth Amendment [of the United States Constitution] restricts the power of the states to place qualifications on the exercise of the franchise in several ways**. The Court has used the Amendment to fashion a fundamental right to vote. It has recognized that the right to vote is one of those rights that 'is preservative of other basic civil and political rights.' Therefore, any alleged impairment of the right should be subjected to 'strict scrutiny' by the Court. Because the right to vote is a fundamental right, any classification defining the ability to exercise the right must meet, under a strict scrutiny review, the dictates of the equal protection guarantee before the Court can sustain the measure as

constitutional." 4 Rotunda & Nowak, *Treatise on Const. L.* § 18.31(a) (4th ed. 2008). See also <u>Burdick v. Takushi</u>, 504 U.S. 428 (1992); and <u>Werme v. Merrill</u>, 84 F. 3d 479 (1st Cir. 1996).

"We have long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." <u>Harper</u>, 383 U.S. at 670. "Because the right to vote has been recognized as a fundamental constitutional right, any alleged infringement of such right is subject to strict judicial scrutiny." <u>Id</u>. at 667 ("Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, **any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.**") (emphasis added); <u>*accord*</u>, <u>*Kramer v. Union Free School*</u>, 395 U.S. 621, 626 (1969) (Where the Supreme Court held that in determining whether state law violated Equal Protection Clause, courts are required to give the provision in question "a close and exacting examination.' [ ] 'This careful examination is necessary because statutes distributing the franchise constitute the foundation of our representative society. Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government.'"); <u>*Williams v. Rhodes*</u>, 393 U.S. 23 (1968) at 31 (Supreme Court held that **only** a "compelling state interest" can justify limiting First Amendment freedoms and that "[t]he State has here failed to show any 'compelling interest' which justifies imposing such heavy burdens on the right to vote and associate."); <u>*Cruz v. Melecio*</u>, 204 F.3d 14, 22 (1st Cir. 2000) (First Circuit found in case where constitutionally protected interest of individuals in free association and electoral participation were implicated, courts must view such restrictions "skeptically, affording exacting scrutiny to such restrictions."); and <u>*Limpieza Cuidadana v. Gracia*</u>, 283 F.Supp.2d 469, 481 (D.P.R. 2003)

9

(District court held that, "[o]nly a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.").[7]

Therefore, since fundamental rights are involved, strict scrutiny requires that "judges must independently review the voting regulation or restriction." 4 Rotunda & Nowak, *Treatise on Const. L.* § 18.31(a) (4th ed. 2008). The strict scrutiny analysis requires the defendants to "demonstrate that its regulation is narrowly tailored to promote an interest that is significant enough to outweigh any incidental restriction on the right to vote or the right of political association. **Laws that totally prohibit a class of persons from voting in a general election or laws that are designed to restrict the voting power of a particular class of persons in a general election are unlikely to survive such a standard.**" *Id*.

Where, like here, the challenged regulation presents a "severe" restriction on a voter's fundamental rights protected through the First, Fifth and/or Fourteenth Amendments, the "regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick v.Takushi*, 504 U.S. 428, 434 (1992), *quoting*, *Norman v. Reed*, 502 U.S. 279, 289 (1992); *accord*, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest."); *Cruz*, 204 F.3d at 22 (in light of individuals' constitutionally protected interest in free association and electoral participation, courts must view any severe restrictions on these rights "skeptically, affording exacting scrutiny to such restrictions."); and *Ayers-Schaffner v. DiStefano*, 37 F.3d 726, 731 (1st Cir.1994) ("Thus, as we have recognized when those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'").

---

[7]   *See* *Piccolo v. New York City Campaign Finance Board*, 2007 WL 2844939 (S.D.N.Y. Sept. 28, 2007)("With regard to a possible equal-protection challenge, the fundamental-rights strand of equal protection has been held to protect voters' rights,…"), *quoting*, *Anderson v. Celebrezze*, 460 U.S. 780, 787 n.7 (1983).

As previously discussed, the present case is not one raising election irregularities or 'garden variety of electoral disputes'. Rather, it is a case challenging the historical custom, policy, or usage of the State Election Commission to print the ballots solely in the Spanish language, which results in the unequal exclusion and/or disfranchisement of a class of otherwise qualified, voters without any sort of constitutional consideration proffered. Thus, their fundamental rights are being shattered and/or disregarded without any sort of compelling state interest whatsoever which, accordingly, rises to the level of constitutional violations actionable in federal court. Said actions are just patently unfair.[8]

When considering the State Election Commission's 'compelling reasons' (if any) for doing so—under the equal protection and due process strict scrutiny lens—there is no doubt that all of the same are pretextual and/or unconvincing. There is no plausible reason which could be given for said actions - further contravened by the fact that the State Election Commission, during the present 2008 electoral process, **printed other electoral material in bilingual format**, as will be further discussed.

All of the aforementioned are precisely the situations which transgresses from the 'garden variety of electoral irregularities' into the realm of a patent violation of the fundamental rights to enfranchise, to vote, to vote effectively, and to have one's vote counted, under the same considerations as other qualified voters—rights secured by the Constitution of the United States, and whose blatant disregard gives way to the federal court's intervention.

---

[8]  In this chiaroscuro corner of the law, one thing is clear: total and complete disenfranchisement of the electorate as a whole is patently and fundamentally unfair (and, hence, amenable to rectification in a federal court). *Bonas*, 263, F. 3d at 75.

E. ***Plaintiffs' Request for a Preliminary Injunctive Relief*[9]**

The four factors to be considered by the District Court in determining whether a preliminary injunction ought to issue are: 1) a likelihood of success on the merits;[10] 2) the potential for irreparable harm to the plaintiffs should preliminary relief not be granted;[11] 3) whether the harm to the defendants from granting the preliminary relief exceeds the harm to the plaintiffs from denying it (balancing of the relevant equities);[12] and 4) the effect of the preliminary injunction on the public interest.[13] *See*: *Naser Jewelers, Inc. v. City of Concord, N.H.*, 513 F.3d 27, 32 (1st Cir. 2008); *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 75 (1st Cir. 2005); and *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914-916 (1st Cir. 1989). After conducting the balancing of these four factors, the Court should find that the balance weighs heavily in favor of granting plaintiffs' request for preliminary injunctive relief.

   *i.* ***Plaintiffs Have Shown a Strong Likelihood of Success on the Merits of their Claims***

The case involves the placing of restrictions and barriers on the ability of U.S. Citizens residing in Puerto Rico who are not fully fluent in Spanish to vote and participate in the electoral process and/or to effectively and fully participate in elections in Puerto Rico to select candidates for federal and local offices. The U.S. Supreme Court has long recognized that the right to vote is a fundamental right protected under the Constitution.

> The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. … Undoubtedly,

---

[9] Plaintiffs hereby wish to incorporate all preceding arguments raised in the instant brief.
[10] *See Lancor v. Lebanon Housing Authority*, 760 F. 2d 361, 362 (1st Cir. 1985).
[11] *See Weinberger v. Romero-Barceló*, 456 U.S. 305, 312 (1982).
[12] The balancing of equities criteria requires a court to examine on which side does the court's equities lie. The First Circuit has stated the test as follows: "The heart of the matter is whether 'the harm caused plaintiff without the injunction, *in light of* the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause the defendants.'" *United Steelworkers v. Textron*, 836 F.2d 6, 7 (1st Cir. 1987) *quoting*, *Vargas-Figueroa v. Saldana*, 826 F.2d 160, 162 (1st Cir. 1987).
[13] This criteria tests whether the public interest will be better served by issuing the injunction than by denying equitable relief. *Mass. Coalition of Citizens v. Civil Defense*, 649 F. 2d 71, 74 (1st Cir. 1981).

12

the right of suffrage is a fundamental matter in a free and democratic society. … Almost a century ago, in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, the Court referred to "the political franchise of voting" as "a fundamental political right, because preservative of all rights."

Reynolds v. Sims, 377 U.S. 533, 555, 561-562 (1964) (internal citations omitted); accord, Burdick v. Takushi, 504 U.S. 428, 433, 441 (1992) ("It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'[…] 'No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.'"), quoting, Illinois Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979); and Wesberry v. Sanders, 376 U.S. 1, 17 (1964);[14] Kramer v. Union Free School, 395 U.S. 621, 626 (1969) ("[S]tatutes distributing the franchise constitute the foundation of our representative society. Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government."); Harper, 383 U.S. at 667 (recognizing political franchise of voting as a fundamental political right in a free and democratic society because voting rights are preservative of other basic civil and political rights); and Bonas, 265 F.3d at 74 ("It is certain that the right to vote-the wellspring of all rights in a democracy-is constitutionally protected. The Supreme Court long ago described that right as a 'fundamental political right.' [...] Thus, the Constitution 'protects the right of all qualified citizens to vote, in state as well as in federal elections.'"), quoting, Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886), and Reynolds, 377 U.S. at 554.[15]

---

[14] "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." Wesberry, 376 U.S. at 17.

[15] Accord, Limpieza Cuidadana v. Gracia, 283 F.Supp.2d 469, 481 (D.P.R. 2003). See Ayers-Schaffner v. DiStefano, 37 F.3d 726, 731 (1ˢᵗ Cir.1994)("'[t]he right to vote is one of the most important and cherished constitutional rights,'[ …]")(internal citation omitted); and New Progressive Party v. Hernández Colón, 779 F.Supp. 646, 656 (D.P.R. 1991)(recognizing that voting is a fundamental political right and that the "right to vote

13

The "liberty" interest which is protected under the Fourteenth Amendment's due process clause has been held to encompass freedoms which constitute "'principle[s] of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'", or those rights which "have been found implicit in the concept of ordered liberty, …" _Palko v. Connecticut_, 302 U.S. 319, 324-325 (1937)[16], quoting, _Snyder v. Massachusetts_, 291 U.S. 97, 105 (1934).  Rights and freedoms recognized among these fundamental rights include, among others, such rights as freedom of speech and freedom to engage in association in support of beliefs and ideas which emanate out of the First Amendment, _Williams v. Rhodes_, 393 U.S. 23, 30 (1968);  _NAACP v. Alabama_, 357 U.S. 449, 460 (1958); _West Virginia State Bd. of Ed. v. Barnette_, 319 U.S. 624, 638-639 (1943); _Palko_, 302 U.S. at 324-328; _Limpieza Cuidadana_, 283 F.Supp.2d at 482[17]; and _Cerezo v. Rivera Quiñones_, 1990 WL 29796 at p.*3 (D.P.R. March 9, 1990).

The political franchise of voting, the right to vote, the rights of qualified voters to cast their votes effectively, and the rights of free speech as to electoral matters[18] and of free

---

freely without undue restrictions is basic to the freedoms guaranteed by the Constitution because it goes to the essence of a democratic society.").

[16] Although the particular holding of _Palko_, that the Fifth Amendment double jeopardy requirement was not applicable to the states, was overturned in _Benton v. Maryland_, 395 U.S. 784, (1969) when the U.S. Supreme Court found that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, …" _Benton_, 395 U.S. at 794, the "ordered liberty" analysis of _Palko_, remains very much a part of modern constitutional jurisprudence when interpreting the Fourteenth Amendment. See, Danforth v. Minnesota, 128 S.Ct. 1029, 1034-1035 (Feb. 20, 2008)("In construing [the Fourteenth Amendment], we have held that it imposes minimum standards of fairness on the States, and requires state criminal trials to provide defendants with protections 'implicit in the concept of ordered liberty.'", quoting, _Palko_, 302 U.S. at 325.

[17] _Limpieza Cuidadana_, 283 F.Supp.2d at 482 ("It '[i]s beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the ... Fourteenth Amendment, which embraces freedom of speech.'"), quoting, _Anderson_, 460 U.S. at 787, and _NAACP_, 357 U.S. at 460.

[18] _Limpieza Cuidadana_, 283 F.Supp.2d at 481 (recognizing the constitutional right under the First and Fourteenth Amendments of an individual "'vote[r] to express their own political preferences.'", and that an individual's independent expression of political views constitutes "'core' First Amendment activity…"), _quoting, Norman v. Reed_, 502 U.S. 279, 288 (1992), and _Colorado Republican Federal Campaign Comm. v. F.E.C._, 518 U.S. 604, 616 (1996).

association for the advancement of political beliefs[19] have all been recognized as fundamental rights, ones which are preservative of other basic civil and political rights, and which are said to "rank among our most precious freedoms." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983); *Williams*, 393 S. Ct. at 30; *Harper*, 383 U.S. at 667, 670; *Arnaud v. Odom*, 870 F.2d 304, 310-311 (5th Cir. 1989). As it was previously discussed, a local custom, policy or usage which poses a threat to this fundamental right must be carefully scrutinized under the 'strict scrutiny analysis.' Therefore, after a close examination of defendants arguments, the Court will note that the same fail to show any 'compelling interest' which justifies imposing such heavy burdens on the right to vote and associate.

The initial refusal on April 16, 2008 by the State Election Commission Defendant Commissioners Gerardo Cruz-Maldonado ("Cruz"), Juan Dalmau-Rodríguez ("Dalmau") and Nelson Rosario-Rodríguez ("Rosario"), and then the ultimate refusal by the SEC President Ramon E. Gomez-Colon ("Gomez") on July 31, 2008, to authorize the option of providing ballots in bilingual format, places a severe burden on the exercise of plaintiffs' First and Fourteenth Amendment rights. This long established policy, custom, or usage for General Elections in Puerto Rico is an utter violation of plaintiffs' constitutional rights.

Plaintiffs and the class they represent are qualified voters, that is they are "citizens of the United States of America and of Puerto Rico, domiciled in the Island, who ha[ve] attained the age of eighteen (18) years on the date of an election, [are] duly qualified prior to the same, and [are] not legally barred from voting."[20] Neither plaintiffs, nor the class which they represent, are

---

[19] *Timmons*, 520 U.S. at 357 (First Amendment protects the right of citizens to associate for the advancement of common political goals and ideas); *Cruz*, 204 F.3d at 22 ("Individuals have constitutionally protected interests in free association and electoral participation,…"); *accord*, *Limpieza Cuidadana*, 283 F.Supp.2d at 481.
[20] See PR ST T. 16 § 3053.

sufficiently fluent in the Spanish language to understand the electoral ballots and their instructions in Spanish.

Plaintiff Sylvia Diffenderfer ("Diffenderfer") is a U.S. Citizen born in New Jersey who had previously registered to vote while living in California and had exercised her First Amendment rights of free speech and association while living in California by expressing her support for the candidates of her choosing. Diffenderfer is now a resident of Gurabo, Puerto Rico who has registered to vote in the General Elections because she, once again, desires to exercise said right. Although Diffenderfer has lived in Puerto Rico for the past fourteen years, she has never voted here because she was intimidated because of her limited knowledge of the Spanish language and the fact that she cannot read and understand ballots and their corresponding instructions, printed solely in Spanish. Diffenderfer, therefore, seeks injunctive and declaratory relief from this Court so that the Court--in requiring defendants to provide ballots and instructions in a language that she understands-- will make it possible for her to, at long last, be able to again exercise her democratic rights in the voting booth and effectively exercise her right to vote. If the ballots and instructions are not provided in English she will not be able to fully participate in the November 2008 elections since she will not be able to fully understand what the instructions to the ballots require her to do, in order to correctly express her voting preferences on the three different electoral ballots. If she attempts to vote in the General Elections using a Spanish-only ballot and instructions, Diffenderfer runs a severe risk of her vote being declared void or invalid because she did not follow the instructions properly since she will not fully understand what they require if they are not in English.

Plaintiff Robert McCarroll ("McCarroll") is a U.S. Citizen who was born in the continental United States in New York, but has lived in Puerto Rico for many years. McCarroll,

however, is not fully fluent in the Spanish language. McCarroll had previously registered to vote while living in the state of New York and had actively exercised his First Amendment rights of free speech and association while living in New York by expressing his support for the candidates of his choice through voting for them. McCarroll had also registered to vote when living as a resident of the state of Florida and he voted in elections conducted in Florida while he was a Florida resident. Plaintiff McCarroll registered to vote in Puerto Rico in advance of the 2004 elections. He attempted to vote in the 2004 general elections, yet was not able to do so effectively. McCarroll knows from his past experience in the 2004 elections that his ability to fully participate in the November 2008 elections will be significantly diminished by defendants' refusal to provide electoral ballots and instructions in English. In the 2004 elections, Plaintiff McCarroll found the ballots to be very confusing. While McCarroll may have recognized the name of a particular candidate or two he wanted to vote for on a particular ballot, he did not fully understand the instructions on the ballots, thus he was unable to know whether he properly voted for any of the candidates whose name he recognized on the ballot, or whether his attempted vote may have been stricken for not properly following the ballot instructions. In the 2004 elections, Plaintiff McCarroll did not complete various sections of the ballots given to him because he was confused and could not understand what he was supposed to do in such sections since he couldn't comprehend what the instructions in Spanish stated. McCarroll was not able to effectively and fully exercise his vote in the 2004 elections due to the Spanish-only ballot and his limited comprehension of the Spanish language. Unless defendants are required for the upcoming General Elections to provide bilingual ballots printed in **both** the English and Spanish languages, Plaintiff McCarroll will be unable to fully exercise his democratic right to vote effectively, as happened in the 2004 elections when he tried to vote.

17

As is demonstrated in the two prior paragraphs, the burdens which are placed on the aforementioned plaintiffs--as well as to the class which they represent--by defendants' refusal to provide ballots and instructions in English is a significant one which enacts severe restrictions on plaintiffs' ability to exercise precious, democratically crucial, fundamental rights; that of being able to exercise the right to vote, to cast their votes effectively, and/or to vote for the candidates of their choice, all without unequal treatment—rights which deserves the highest protection in our system of government. After all, "the right to vote is a core right preservative of all other rights in a democratic society and the undermining of which, threatens the legitimacy of our system of representative government." _Reynolds_, 377 U.S. at 554-555, 561-562; _Burdick_, 504 U.S. at 433, 441; _Wesberry_, 376 U.S. at 17; _Kramer_, 395 U.S. 626;  _Harper_, 383 U.S. at 667;  and _Bonas_, 265 F.3d at 74.

Undoubtedly, plaintiffs' core First Amendment rights of free speech and free association are undermined by defendants' actions in unnecessarily creating a barrier to plaintiffs' full and effective participation in the electoral process by refusing to provide ballots and ballot instructions in English. _Norman_, 502 U.S. at 288; _Cruz_, 204 F.3d at 22; _Ayers-Schaffner_, 37 F.3d at 727, 729 and _Limpieza Cuidadana_, 283 F.Supp.2d at 481.

Moreover, defendants' conscious decision not to authorize the printing of the ballots and the incorporated instructions in English places a significant burden on plaintiffs' exercise of their rights to due process of law[21] resulting in a process that is fundamentally unfair as to them and those registered voters similarly situated to them who are not fluent in Spanish, the only language which the ballots and their incorporated instructions are to be printed in. Griffin, 570 F.2d at 1077 (1st Cir. 1978) (right to vote is a federally protected right and if the election process

---

[21] The U.S. Supreme Court has held that Puerto Rico is subject to the constitutional guarantees of due process. Rodríguez, 457 U.S. 1 (1982) at 7.

reaches point of fundamental unfairness, relief is available under §1983 for violation of due process). Accord, Bonas, 265 F.3d at 74; and Doe v. Rowe, 156 F.Supp.2d 35, 47-48 (D.Me. 2001)("[V]arious courts have recognized that the fundamental nature of the right to vote gives rise to a liberty interest entitled to due process protection.") (internal citations omitted).

Defendants' determination, furthermore, poses a significant impairment of plaintiffs' equal protection[22] rights since different categories of similarly situated qualified registered voters are being treated differently.  One group is being offered ballots and instructions in a language that they are fluent in. Consequently, that group is able to fully comprehend the ballots and their instructions. By contrast, a second discrete group of voters such as plaintiffs - those qualified registered voters not fluent in the Spanish language – cannot effectively exercise their right to vote since they are only offered ballots and instructions in a language that they do not sufficiently understand. The Supreme Court has recognized, "[i]n decision after decision, [ ] that a citizen has a constitutionally protected right to participate in elections **on an equal basis with other citizens in the jurisdiction**." _Dunn v. Blumstein_, 405 U.S. 330, 336 (1972) (internal citations omitted and emphasis added); _accord_, _Rodríguez_, 457 U.S. at 10; and _City of Mobile Alabama v. Bolden_, 446 U.S. 55, 77 (1980).[23] Moreover, plaintiffs and the class that they represent–unlike the the Spanish proficient population--also run a significant risk of not having their votes counted, since any contravention to the written instructions provided only in Spanish may invalidate their votes.

The restrictions on plaintiffs' ability to fully exercise their right to vote summarized above - at least as to the ballot and instructions governing the elections of candidates for resident

---

[22] The U.S. Supreme Court has held that Puerto Rico is subject to the constitutional guarantees of equal protection. _Rodríguez_, 457 U.S. at 7.

[23] See also, Harper, 383 U.S. at 665 ("We do not stop to canvass the relation between voting and political expression. For it is enough to say that once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment.").

commissioner - should also be found to burden plaintiffs' rights under the Privileges and Immunities[24] Clause of the Fourteenth Amendment. *See*: *U.S. Term Limits, Inc. v. Bryant*, 514 U.S. 779, 843-844 (1995); *Madden v. Commonwealth of Kentucky*, 309 U.S. 83, 90-91 (1940); *The Slaughter-House Case*s, 83 U.S. (16 Wall) 36, 73-80 (1872); and 4 Rotunda & Nowak, *Treatise on Const. L.* § 10.3 (The Supreme Court in the *Slaughter-House Cases*, 83 U.S. at 79-81 decided that the Privileges and Immunities Clause of the Fourteenth Amendment "only protects those rights peculiar to being a citizen of the federal government; it does not protect those rights which relate to state citizenship. Therefore, the clause only refers to uniquely federal rights such as the right to petition Congress, **the right to vote in federal elections**, the right to interstate travel or commerce, the right to enter federal lands, or the rights of a citizen while in the custody of federal officers.") (emphasis added and internal footnotes omitted). [25]

In summary, and as previously discussed, defendants' refusal to provide ballots and accompanying instructions in English for the General Elections, essentially disenfranchises plaintiffs and the class of individuals similarly situated to them, which are not fluent in the Spanish language; by imposing unequal and unjustifiable severe burdens on their ability to effectively exercise fundamental rights to vote, to freedom of speech and association, to the protections of equal protection, due process and their right to have defendants not abridge their privileges and immunities as U.S. citizens to effectively exercise their right to vote for a resident commissioner in a federal election.

---

[24] The Puerto Rico Federal Relations Act, 48 U.S.C. § 737, specifically provides that, "The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union [...]" *accord*, *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 37 n. 14 (1st Cir. 2001).

[25] *See also*, *Barefoot v. City of Wilmington, N.C.*, 306 F.3d 113, (4th Cir. 2002)("The Privileges and Immunities Clause of the Fourteenth Amendment 'protects all citizens against abridgement by states of rights of national citizenship as distinct from the fundamental or natural rights inherent in state citizenship.'"), *quoting*, *Madden*, 309 U.S. at 90.

**Furthermore**, defendants have not put forward any compelling or even valid interest justifying the severe burden on these plaintiffs' fundamental rights caused by Spanish-only electoral ballots so as to survive the strict scrutiny standard.

As previously discussed, because of the fundamental nature of the constitutionally protected right to vote, any alleged infringement of such right is generally subject to strict judicial scrutiny with the state required to articulate a compelling countervailing interest. *See*: *Harper*, 383 U.S. at 667; *Kramer*, 395 U.S. at 626; *Reynolds*, 377 U.S. at 533; *Williams*, 393 U.S. at 31; *Cruz*, 204 F.3d at 22; and *Limpieza Cuidadana*, 283 F.Supp.2d at 481. However, unlike in certain cases where the state may have a compelling, legitimate, and neutral interest to protect, which it advances as the rationale for why, in such circumstances, it is to burden group's rights in order to protect such interest--defendants in this case have not even articulated a valid reason why plaintiffs' fundamental rights are being impaired. The State Election Commission's President, Gomez, by means of a Resolution dated July 31, 2008, did not put forth any important interest, or even proffer a valid reason as to why the Commission was refusing to print the ballots and instructions in bilingual format. In sum and substance, President Gomez adopted by reference the long standing policy, custom, or usage that, for General Elections, the State Election Commission was not "required" to print the ballots in bilingual format because, allegedly, no law or regulation required the Commission to do so.[26] This, in itself, is plainly an insufficient and a patently unfair justification.

Although generally the required strict scrutiny analysis would require the Court to independently review the voting regulation or restriction, and require the defendants to demonstrate that its regulation is narrowly tailored to promote an interest that is significant enough to outweigh any incidental restriction on the rights to vote, to vote effectively, or the

---

[26] See Exhibits 1 and 2.

right of political association,[27] and *then* do a weighing of the interests at stake,[28] there is really nothing to balance here **where defendants have not articulated <u>any valid interest,</u> much less a compelling one,** which the Court would then be required to balance against the impairment of plaintiffs' fundamental rights.

Although applicable precedent required defendants - in cases like this one, where the challenged ruling presents a "severe" restriction on a voter's fundamental rights under the First, Fifth and/or Fourteenth Amendments – to demonstrate that its ruling was narrowly drawn to advance a state interest of compelling importance. *See*: <u>Timmons</u>, 520 U.S. at 358; <u>Burdick</u>, 504 U.S. at 434; <u>Norman</u>, 502 U.S. at 289; <u>Cruz</u>, 204 F.3d at 22; and <u>Ayers-Schaffner</u>, 37 F.3d at 730, defendants did not narrowly tailored their ruling to try to minimize the impairment of plaintiffs' rights. Defendants did not even inquire into the problem brought before it by alternate Commissioner Melendez when he brought up the fact that the fundamental rights of a significant segment of the eligible voting population in Puerto Rico--that does not understand Spanish sufficiently to effectively exercise the right to vote if there is only a Spanish language ballot-- would be impaired. Defendants instead opted for a broad--across the board--ruling refusing to authorize an English-language ballot option in the November 2008 elections under any circumstances.

Under these circumstances, the Court must find that the severe restrictions on plaintiffs' voting rights are patently unfair and must be enjoined for contravening with the rights secured by the Constitution of the United States. Particularly, in light of defendants' arbitrariness, who have not put forth any compelling reason for unequally treating plaintiffs' voting rights. The Court must find that the first of the four factors for injunctive relief weighs heavily in favor of plaintiffs

---

[27] <u>See</u> 4 Rotunda & Nowak, *Treatise on Const. L.* § 18.31(a).
[28] <u>Burdick</u>, 504 U.S. at 434, <u>quoting</u>, <u>Anderson</u>, 460 U.S. at 789.

since plaintiffs are highly likely to succeed on the merits of their claims. *See*: *Naser Jewelers*, 513 F.3d at 32; *Rio Grande Commun. Health Ctr.*, 397 F.3d at 75; and *K-Mart*, 875 F.2d at 914-916.

### ii.   *Plaintiffs Will Suffer Irreparable Injury if a Preliminary Injunction is not Granted.*

The second factor which the District Court should consider when determining whether a preliminary injunction should properly be issued is the potential for irreparable harm to the plaintiffs if preliminary relief is not be granted. *See*: *Naser Jewelers*, 513 F.3d at 32; *Rio Grande Commun. Health Ctr.*, 397 F.3d at 75; and *K-Mart*, 875 F.2d at 914-916. Irreparable injury is said to be the "type of harm not readily measurable or fully compensable in damages", *K-Mart*, 875 F.2d 907, 915 (1st Cir. 1989); *and Public Service Company of New Hampshire v. Town of West Newbury,* 835 F.2d 380, 382 (1st Cir. 1987), and the kind for which monetary damages do not provide an adequate remedy. *See*: *Auburn News Co., Inc. v. Providence Journal Co.*, 659 F.2d 273, 277 (1st Cir. 1981);  *Puerto Rico Conservation Foundation v. Larson*, 797 F.Supp. 1066, 1071 (D.P.R. 1992). *accord*, *Cardona v. Oakland Unified School District, Calif.*, 785 F.Supp. 837, (N.D.Cal. 1992) ("Irreparable injury, the second prong of the test, is generally established where the alleged injury cannot be adequately compensated by monetary damages."). Since as shown above, plaintiffs are likely to prevail on the merits of their claims which involve deprivations of fundamental constitutional rights secured under the First, Fifth and Fourteenth Amendments to the U.S. Constitution, irreparable injury is easily found.

Deprivation of fundamental political rights such as the right to vote, which right ensures that individual citizens have a voice in our system of representative government simply cannot be adequately compensated by an award of money damages.

> The injury alleged here is denial of the right to vote. As the Supreme Court recognized long ago, the right to vote is " 'a

23

> fundamental political right, because preservative of all rights.' ... [E]ach and every citizen has an inalienable right to full and effective participation in the political processes of his State's legislative bodies." … Given the fundamental nature of the right to vote, monetary remedies would obviously be inadequate in this case; it is simply not possible to pay someone for having been denied a right of this importance.

_Dillard v. Crenshaw County_, 640 F.Supp. 1347, 1363 (M.D.Ala. 1986); _accord_, _Common Cause/Georgia v. Billups_, 439 F.Supp. 2d 1294 (N.D.Ga. 2006) ("Given that the right to vote is a fundamental right and is preservative of all other rights, denying an individual the right to vote works a serious, irreparable injury upon that individual."); _Boustani v. Blackwell_, 460 F.Supp.2d 822, 827 (N.D.Ohio 2006) ("The loss of the protected right to vote 'for even minimal periods of time, constitutes irreparable injury.'") (internal citation omitted); _The Florida Democratic Party v. Hood_, 342 F.Supp.2d 1073, 1082 (N.D.Fla. 2004) ("A person who is denied the right to vote suffers irreparable injury. One need look no further than the 2000 election to confirm that that is so. There was post-election litigation seeking to reopen the polls or otherwise allow further voting by those who had been turned away, but that litigation went nowhere. The problem was irremediable."); and _Cardona_, 785 F.Supp. at 840 ("Abridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury.") (Internal citations omitted)'[29] Plaintiffs, and the class that they represent, will clearly suffer irreparable injury if the requested preliminary injunctive relief for protecting their fundamental right to vote is not granted, since they face a serious risk of being disenfranchised from their electoral rights in the 2008 General Elections, effectively exercise their right to vote, and/or have a similar assurance to the rest of

---

[29] Since each plaintiff's interest in participating in the political process through voting is a right recognized by the U.S. Supreme Court to be both "individual and personal in nature." Reynolds, 377 U.S. at 561, accord, Griffins, 570 F.2d at 1072 and each plaintiff will suffer irreparable injury if the ballots are not provided in English, then preliminary injunctive relief may properly issue on behalf of the plaintiffs in their individual capacity irrespective of the Court's determination as to class action status.

the population that if they follow the instructions correctly their vote will be duly counted since any contravention to the written instructions provided only in Spanish may invalidate their votes.

The actual deprivation of plaintiffs' equal protection and due process rights and their rights under the privileges and immunities clause of the Fourteenth Amendment and/or Fifth Amendment, which plaintiffs have a strong likelihood of prevailing on, should also be found to constitute irreparable injury. As the leading Wright, Miller & Kane treatise states, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 11A Wright, Miller & Kane, *Fed. Prac. & Proc. Civ.* 2d §2948.1 (2008). *accord*, *Gour v. Morse*, 652 F.Supp. 1166, 1168, 1173 (D.Vt. 1987) ("Constitutional rights are so basic to our society that their deprivation must be redressable by equitable remedies. Injury from their deprivation is almost by definition irreparable.").[30]

Based on the above analysis, plaintiffs have demonstrated a strong likelihood of success on various constitutional claims for which monetary damages would not be an adequate remedy. Plaintiffs have further demonstrated that they met the irreparable injury prong of the test for granting preliminary injunctive relief, which points strongly in favor of granting them injunctive relief on their own behalf and the class they represent.   Plaintiffs will undoubtedly suffer irreparable injury to their right to effectively and fully participate in the General Elections if a preliminary injunction is not granted, and any adjudication of entitlement to relief after the election has taken place would not constitute an adequate remedy to the deprivation of their

---

[30] Courts, moreover, have found irreparable injury in various cases asserting similar constitutional claims where plaintiffs' constitutional rights were alleged to have been violated and/or found to be violated. *See e.g. Warren v. City of Athens, Ohio*, 411 F.3d 697, 711-712 (6th Cir. 2005)(procedural due process case); *Henry v. Greenville Airport Commission*, 284 F.2d 631 (4th Cir. 1960)(equal protection case); *Miller v. Blackwell*, 348 F.Supp. 2d 916, 920-922 (S.D.Ohio)(due process/constitutional right to vote case); *Spencer v. Blackwell*, 347 F.Supp. 2d 528, 533-534, 537-538 (S.D.Ohio)(14th Amendment constitutional right to vote case); *Swanson v. Bennett*, 219 F.Supp. 2d 1225, 1226, 1233-1234 (M.D.Ala. 2002)(1st and 14th Amendment due process/electoral rights case); *Adams v. Baker*, 919 F.Supp. 1496, 1503-1505 (D.Kan. 1996)(equal protection case); *Battle v. Munic. Housing Auth. for City of Yonkers*, 53 F.R.D. 423, 424, 427, 429 (S.D.N.Y. 1971)(equal protection and due process case).

fundamental constitutional right--since they will have lost the chance to vote for elected officials at the top of the Executive branches, municipal level, and the state and municipal legislative branches, or risk voiding their vote in attempting to do so. These elected officials are precisely the persons responsible of shaping public policy and the direction of the Island and their municipalities over the next four years and beyond.

### iii. When Balancing the Equities, the Harm to Plaintiffs if Preliminary Injunctive Relief Protecting the Exercise of their Fundamental Rights is Denied Far Exceeds any Unarticulated Harm to Defendants if a Preliminary Injunction is Granted.

The third factor which the District Court is to evaluate when determining whether a preliminary injunction should be issued is whether the harm to the defendants from granting the preliminary relief exceeds the harm to the plaintiffs from denying it, also known as the balancing of the relevant equities. *See*: *Naser Jewelers*, 513 F.3d at 32; *Rio Grande Commun. Health Ctr.*, 397 F.3d at 75; and *K-Mart*, 875 F.2d at 914-916. In doing this balancing, the Court must heavily weigh the fundamental nature of the constitutionally protected right to vote, with any alleged infringement of such right being subjected to strict scrutiny and, thus, defendants burden of articulating a compelling countervailing interest.[31]

Defendants' predicament is that the reasons given by the State Election Commission for refusing to provide ballots in a bilingual format for the November 4, 2008 elections lack substance to balance against the harm engendered from defendants' infringement of plaintiffs' fundamental rights. As previously discussed, they failed to articulate **any valid interest** for unequally barring plaintiffs', and the class which they represent, from their right to vote. President Gómez's stated position as to the Commission's interest in not publishing ballots in bilingual format, as was articulated in the July 31, 2008 resolution, is solely that the Commission

---

[31] *See*: *Harper*, 383 U.S. at 667; *Kramer*, 395 U.S. at 626; *Reynolds*, 377 U.S. at 533; *Williams*, 393 U.S. at 31; *Cruz*, 204 F.3d at 22; and *Limpieza Cuidadana*, 283 F.Supp.2d at 481.

was not "required" by law to do so. Said reason is in itself insufficient, and much less articulates a compelling state interest sufficient to properly deprive plaintiffs of their fundamental constitutional right.

Defendants reasons for not printing the ballots in bilingual format are at the very least highly suspect. Specially, when in three printed electoral materials governing electoral matters, the Commission has recognized the critical importance of providing informative materials to prospective voters in bilingual format. **First**, in its publication on Voter Rights, "*Derechos Del Elector*," the eight enumerated Voter Rights are set forth in both Spanish and English.[32] **Second**, in its publication on Absentee Ballot Request, "*Solicitud de Papeleta para el Voto Ausente*", the instructions on filling out said application are printed in both Spanish and English.[33] **Third**, in its publication on Prohibition and Election Felonies, "*Prohibiciones y Delitos Electorales*", the listing of such prohibitions and election felonies are stated in both Spanish and English.[34] Moreover, the ballots--and instructions printed therein--for the recent Presidential Democratic Party carried out in June, 2008, were also printed in bilingual format.

Yet, inexplicably, when it comes to the direct exercise of the franchise itself, the State Election Commission suspiciously decided, without any valid reason, that there is no need to provide electoral ballots--and encompassed instructions as to how to vote on such ballots--in bilingual format. This despite the fact that a significant portion of the residents and registered voters of Puerto Rico do not understand Spanish well enough to effectively vote with a Spanish only ballot, and the fact that NPP alternate Commissioner Melendez had informed them voters could not be discriminated against for not being able to understand the Spanish language. Moreover, the fact that the State Election Commission has provided electoral materials in

---

[32] http://www.ceepur.org/sobreCee/presidencia/prensa/aviso/pdf/2007/derechos%20elector%20rev.pdf
[33] http://www.ceepur.org/servicios Lineas/solicitud Voto/voto Ausente/Sol%20JAVAPrim08.pdf
[34] http://www.ceepur.org/sobreCee/presidencia/prensa/aviso/pdf/2007/prohibiciones%20y%20delitos.pdf

bilingual format in the past, and has given no compelling reason herein as to why it could not similarly provide such a ballot for the General Elections, demonstrates that there is no significant burden in providing one.

Consequently when balancing the equities as to whether preliminary injunctive relief should be granted, in light of the controlling precedent as to how balancing is to be done in the face of an infringement on fundamental constitutional rights, the Court must find that the severe restrictions placed on plaintiffs' voting rights--by defendants' refusal to provide a ballot in bilingual format--are unjustified, unfair, must be enjoined, and constitutes irreparable harm. The Court must further find when weighing the harms and applying the third factor for injunctive relief that the balancing of the equities strongly tilts in favor of plaintiffs, since defendants have put forth no compelling reason for imposing such a severe burden on plaintiffs' voting rights.  If a preliminary injunction is not granted, plaintiffs and those similar to them in the class that they represent will be disenfranchised from exercising their suffrage rights in the November 2008 elections.

### iv. The Public Interest Supports Granting Injunctive Relief and Protecting Plaintiffs' Exercise of Fundamental Constitutional Rights.

The last of the factors for considering requests for preliminary injunctive relief is the effect of the preliminary injunction on the public interest. *See*: *Naser Jewelers*, 513 F.3d at 32; *Rio Grande Commun. Health Ctr.*, 397 F.3d at 75; and *K-Mart*, 875 F.2d at 914-916.  The public interest here points clearly in favor of granting plaintiffs the injunctive relief requested.  "[I]t is always in the public interest to prevent violation of a party's constitutional rights." *Deja Vu of Nashville, Inc. v. Metro. Govt. of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001) (internal citation omitted); and *Spencer*, 347 F.Supp.2d at 538.

28

The preliminary injunction if granted will allow plaintiffs to exercise their democratic rights as citizens to vote, to be heard on the issues of the day through the electoral franchise, and to associate through the ballot with candidates whose policies and ideas they share. The public has an interest as well in promoting the full democratic participation of all its citizens and in ending policies such as a Spanish-only ballot which perpetuate discrimination against a significant linguistic minority population within Puerto Rico.  As this Court noted in a related context,

> The public has an overriding interest, however, in eliminating discrimination for or against its members based upon a category such as language. In the United States, there is not official language, and if prudence and wisdom (and possible the Constitution) prevail, there never will be. Attempts to establish an official language to the detriment of rights of a linguistic minority amount to unconscionable bigotry. This is true in Florida and California, where the bigotry is aimed as speakers of Spanish, and it will be true in areas where the minority language is English.

*Harris v, Cruz*, 710 F.Supp. 29, 31 (D.P.R. 1989).

If a preliminary injunction ordering the printing of ballots in bilingual format is not granted, registered voters like plaintiffs and the class which they represent, who do not understand Spanish and cannot understand a ballot written solely in that language will be shut out of the 2008 electoral process and will remain second-class citizens within Puerto Rico when compared to their Spanish-speaking brethren. Plaintiffs will continue to be unable to fully participate in the electoral process and to be heard and to have their voices represented in this democratic system on important issues of public policy that govern their everyday lives.

## F.  *The Class Herein Should be Certified Accordingly*

In a request for certification as a class action, the claimant has the burden of showing that all the prerequisites for a class action have been met. *Makuc v. American Honda Motor Co. Inc.,*

29

835 F.2d 389, 394 (1st Cir.1987). When evaluating such a request, the court must take the allegations in support of the certification, as true, and need not examine the merits of the case. *See*: *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (Holding that a decision on class certification does not involve an examination of the merits of the underlying dispute, but rather serves the limited purpose of determining whether a class action is the most appropriate mode of adjudication.)

Nevertheless, to obtain class action certification, the claimant must meet two requirements. First, he must comply with the prerequisites of Rule 23(a),[35] and, second, he must establish that the suit is appropriate for class action treatment under one of the three subdivisions of Rule 23(b).[36] *See*: *Wilensky v. Olympic Airways*, 73 F.R.D. 473, 475 (E.D.Pa.1977). Therefore, the class must meet the requirements of: (a) numerosity of members, (b) commonality of one or more questions of law or fact, (c) typicality of representative claims or defenses, and (d) adequacy of representation. *Commonwealth et al. v. M/V Emily S et al.*, 158 F.R.D. 9, 12 (D.P.R.1994). Once requirements enunciated in Rule 23(a) are established, the proponent for certification must also establish that the suit is appropriate for class action treatment under one of the three subdivisions of Rule 23(b).

---

[35] Rule 23(a) of the Federal Rules of Civil Procedure provides that: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

[36] "A class action may be maintained if Rule 23(a) is satisfied and if (1) prosecuting separate actions by or against individual class members would create a risk of:(a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### i.   *Numerosity of Members*

The first prerequisite is numerosity, which simply means that joinder of all members of the proposed class is impracticable and/or where the members cannot easily be identified. *See*: *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-32 (1st Cir. 1985), *cert. denied,* 476 U.S. 1172 (1986). The U.S. Census Bureau estimated that in the year 2000, over 500,000 residents in Puerto Rico only spoke English. Those 500,000 people are potentially the size of the class represented by the named plaintiffs in this action. Moreover, the class members are spread out across Puerto Rico and individualizing the same would render impractical in light of the short amount of time left for the upcoming elections.

### ii.   *Commonality of One or More Questions of Law or Fact*

The second prerequisite of Rule 23(a) is that members of the class share common questions of law or fact. "It is not necessary that all questions of law or fact involved in the dispute be shared commonly, however." *Weiss v. York Hospital,* 745 F.2d 786, 808-09 (3d Cir. 1984), *cert. denied,* 470 U.S. 1060 (1985). *See also:* 3B *Moore's Federal Practice* para. 23.06-1 at 23-159 to 23-160 (2d ed. 1987) (Rule 23(a)(2) "does not require that *all* questions of fact and law be common, but only demands that a question of  law *or* fact be presented which is shared in the grievances of the prospective class as defined.")

There is no doubt that the named plaintiffs herein share common questions of law and fact with the class they intend to represent. None of them are able to speak, read, and understand Spanish so as to effectively exercise their fundamental right to vote and/or even exercise it at all. Come November, all the members of the class will be unable to understand the instructions on the ballot if they are printed solely in the Spanish language. In all cases, their First, Fifth, and

Fourteenth Amendment rights are seriously undermined by the policy and/or custom established by the State Election Commission.

### iii. Typicality of Representative Claims or Defenses

To satisfy the typicality requirement indicated above, the party seeking certification must demonstrate that the representative's claims are typical, although not identical, to the claims of the proposed class members. _Mick v. Ravenswood Aluminum Corporation,_ 178 F.R.D. 90, 92 (S.D.Va.1998). Typicality requires that the court to evaluate the pleadings and determine if the representative's claims are essentially characteristic of the claims of the class at large. _L.P. Hurd, supra, at 238._ "The representative's claims must arise from the same event or practice or course of conduct that gives rise to the claims of the other class members and be based on the same legal theory." _Id._ at 239.S_ee also: Spencer, supra,_ at 989-990. However, "not all class members need 'be aggrieved by or desire to challenge defendant's conduct in order for some to seek relief under [Rule 23] (b)(2).' 7A Wright and Miller, _Federal Practice and Procedure, Civil_: s 1775 at 21 (1972); _Davis v. Weir,_ 497 F.2d 139, 146-47 (5th Cir. 1974); _Norwalk CORE v. Norwalk Redevelopment Agency,_ 395 F.2d 920, 937 (2d Cir. 1968); _see Senter v. General Motors Corp.,_ 532 F.2d 511, 523-25 (6th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976)." _Griffin_, 570 F. 2d at 1073. [37]

In the instant case, the claims are not only typical but, rather identical among all members of the class. Moreover, the representative's claims are characteristic of the claims of the class at large. All plaintiffs seek injunctive and declaratory relief so that the electoral ballots be printed in

---

[37] As the First Circuit discarded in _Griffin_: "[Defendant] further argues that [plaintiffs'] claims were not "typical", since not all of the class were shown to have been willing and able to vote in person had there been no absentee ballots. Not all, in other words, relied to their detriment upon the officially issued ballots. The district court resolved this question by declining to presume that members of the plaintiff class 'would have waived their fundamentally important right to vote for reasons of convenience', citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Fuentes v. Shevin, 407 U.S. 67, 94-96 & n. 31, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937)." _Griffin_, 570 F. 2d at 1073.

bilingual format in order to be able to fully understand them and avoid the risk of invalidating their vote based on their lack of understanding of the instructions on the ballots.

"The injunctive relief referred to (in the rule) does not require that the district court look into the particular circumstances of each member of the class." […] Given the fundamental right in question and the relief being sought, plaintiffs' showing provided a sufficient basis for the district court's determination that the named plaintiffs' claims typified those of the class and otherwise met the standards of Rule 23(b)(2). (Internal citations omitted). _Griffin_, 570 F. 2d at 1074.

### iv.  *Adequacy of Representation*

The Court must inquire whether the named plaintiffs have the ability and the incentive to represent the claims of the class vigorously, that they have obtained adequate counsel, and that the named plaintiffs do not have interests adverse to the class. _Andrews v. Bechtel Power Corp.,_ 780 F.2d 124, 130 (1st Cir.1985). For analyzing this requirement, the First Circuit has devised a two-part test: "the moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." _Id_.

The Court is very much well aware already of plaintiffs' counsel qualifications, vast experience in litigating civil right cases such as the present one, and capability of vigorously representing plaintiffs.[38] Moreover, given the identical nature of the questions of law, fact and remedy sought no such interest-collusion among the members of the class can be foreshadowed.

---

[38] See Exhibit 3 – ALB Jurisprudence.

### v.   *Rule 23(b)Requirements*

As previously discussed, in addition to fulfilling the prerequisites of Rule 23(a), plaintiffs must fulfill one of the three provisions of 23(b). <u>Fed. R. Civ. P. 23(b)</u>. Rule 23(b)(2), provides: "[t]he party opposing the **class** has acted or refused to act on grounds generally applicable to the **class,** thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the **class** as a whole." <u>Id</u>. On the other hand 23(b)(3) provides that:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

A class action is appropriate under Rule 23(b) when "the party opposing the class […] has established a regulatory scheme *common to all class members."* <u>Johnson v. American Credit Co. of Georgia, 581 F.2d 526, 532 (5th Cir. 1978)</u> (emphasis supplied) *(quoting* 7A C. Wright, Miller, & Kane, *Federal Practice and Procedure:* Civil Section 1775 at 19-20 (1972)). There is no doubt that plaintiffs fulfill these requirements. As the Complaint specifically alleges, the present action is grounded on defendants' policy, custom, or usage to establish a regulatory scheme which affects all members of the class.

34

**WHEREFORE**, plaintiffs and the class which they represent pray the Court to deem them in compliance with its order at Docket Document No. 5 and that it:

(1)     Certify the present class of plaintiffs as proper under <u>Rule 23 of the Federal Rules of Civil Procedure;</u>

(2)     Issue judgment declaring that defendants' historical custom, policy, or usage to print electoral ballots solely in the Spanish language disenfranchises plaintiffs and the class that they represent from their fundamental constitutional rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States, particularly their voting right.

(3)     Issue of a preliminary and permanent injunction, under the doctrine of *Ex Parte Young,* 209 U.S.123 (1908), directing defendants, their agents, employees, successors, and all persons in active concert or participation with them to provide plaintiffs (and the class which they represent) during the November 4, 2008 General Elections with electoral ballots--and its integrated voting instructions as required by law--in bilingual format so that qualified voters who do not proficiently read or understand Spanish (yet, read and understand English) can equally exercise their right to vote intelligently and/or minimize the risk of having their vote invalidated or annulled, and avoid that said particular minority be disfranchised or excluded in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution;

(4)     Issue of a preliminary injunction staying the bidding process, adjudication and printing of the ballots, scheduled to start on September 10, 2008, until resolution of the matter requested herein.

(5)     Enjoin defendants, their agents, employees, and representatives from denying Plaintiffs their right to vote, and direct Defendants to prepare and circulate election ballots--and its integrated voting instructions— in bilingual format, in accordance with this Court's declarations;

(6)     Award plaintiffs their costs in this action, including reasonable attorney's fees under 42 USCA §1988; and

(7)     Grants plaintiffs such other and further relief as may seem just and proper, including, but not limited to, nominal monetary damages in the amount of one dollar ($1.00).

**IT IS HEREBY CERTIFIED** that the instant document has been filed with the court's CM/ECF System, which will simultaneously serve notice on all counsel of record, to their registered e-mail addresses.   Any non registered attorneys and/or parties will be served via regular mail.

**RESPECTFULLY SUBMITTED**

In Guaynabo, Puerto Rico, this 26th day of August, 2008.

**ALDARONDO & LÓPEZ BRAS**
Attorneys for Plaintiffs

ALB Plaza, Suite 400
#16 Carr.199
Guaynabo, P.R. 00969
Tel. (787) 474-5447 / Fax. (787) 474-5451
e-mail: alb@alblegal.net


*s/ Eliezer Aldarondo Ortiz*
**ELIEZER ALDARONDO ORTIZ**
**USDCPR 125402**


s/ Eliezer A. Aldarondo
**ELIEZER A. ALDARONDO**
**USDCPR 225906**


*s/ Iván Castro Ortiz*
**IVÁN CASTRO ORTIZ**
**USDCPR 214703**


*s/ Sheila Torres Delgado*
**SHEILA TORRES DELGADO**
**USDCPR 222706**


*s/ Michael C. McCall*
**MICHAEL C. McCALL**
**USDCPR 210412**