[CERTIFIED TRANSLATION]

[Logo]
State Election Commission
Commonwealth of Puerto Rico

| | |
|---|---|
| IN RE: | CEE-RS-04-43 |
| PROPOSAL TO AMEND THE REGULATIONS FOR THE 2004 GENERAL ELECTIONS AND GENERAL COUNT | RE: APPLICABILITY OF THE HAVA ACT |

**RESOLUTION**

A proposal to amend the 2004 General Elections and General Count Regulations in order to provide electoral materials both in Spanish and in English was filed with the State Election Commission's Alternate Commissioners and Regulatory Review Committee. This request is based on the applicability of the Help America Vote Act (HAVA). The matter was presented at a plenary session of the Commission. As the Electoral Commissioners were unable to reach a unanimous decision with respect to this matter, it was submitted to the consideration of the President.

Upon examination of the provisions of the HAVA Act, we understand this act does not impose on Puerto Rico the obligation to provide electoral materials in English. With respect to languages, this statute only requires that an alternative language be made accessible in cases where this is required under federal law. We must examine the scope of that part of the HAVA Act.

Based on the foregoing, the controversy before our consideration is specific and strictly a matter of law. This controversy is centered on determining whether in the 2004 General Elections Puerto Rico's electoral system must provide electoral materials in an "alternative language," in accordance with the provisions of the Help America Vote Act.[1]

In October 2002 the United States Congress passed the Help America Vote Act, commonly known as HAVA. The purpose of this Act was to establish a program to provide funds to the states and other covered jurisdictions to improve the administration of federal elections. Pursuant to Section 901 of the Act, Puerto Rico was included in the provisions of the

---

[1] In the Primary Elections held November 9, 2004, the ballots included information in English as well as in Spanish. That situation does not resolve the matter at hand. The legal aspect concerning us today was not analyzed at the time. The fact that both languages were used stemmed from a decision by the very same political parties that participated in the Primaries.

[CERTIFIED TRANSLATION]

statute (42 U.S.C. 15541). After completing the corresponding administrative procedures, Puerto Rico submitted in a timely fashion an Action Plan to ensure compliance with this Act.

By virtue of the HAVA Act, the states and other jurisdictions covered under the statute must use the funds for the following purposes, among others: to improve the administration of elections that include federal positions; to educate voters with respect to the processes and their rights; to train personnel; to provide assistance and improve access for voters with disabilities and; to meet the standards required of a voting system. With respect to the latter, Section 301 sets forth the standards required of voting systems used in elections for federal office. The standards are aimed at having uniform and non-discriminatory electoral processes in all the jurisdictions covered by the Act. Paragraph (4) of Section 301 of the HAVA Act establishes the following voting standard:

> "(4) Alternative Language Accessibility: The voting system shall provide alternative language accessibility pursuant [sic] to requirements of sections 203 of Voting Rights Act of 1965" (42 U.S.C. 1973 aa-1a)."[2]

Based on the aforementioned section, we must evaluate whether or not the State Election Commission must provide an alternative language in the voting system. In order to answer this question we must examine the provisions of the Voting Rights Act of 1965, given the fact that the HAVA Act itself refers us to this statute.

The purpose of the Voting Rights Act of 1965 (VRA) is to establish guarantees for voters to exercise their constitutional right to vote in uniform electoral processes, without discriminatory practices. To that effect, the VRA imposes on states or covered political subdivisions the obligation to provide materials and information related to the electoral process in an alternative language when there are citizens who speak a minority language participating in the state's electoral process. However, for this obligation to be enforced, the Census Bureau Director must first determine there is such a language minority group among voting age citizens, as defined in the Act. For a better understanding of what we are discussing, we must examine Section 1973 aa-1a of the VRA, which provides as follows:

"Sec. 1973aa-1a – Bilingual election requirements

(a) Congressional findings and declaration of policy

---

[2] After reading the HAVA Act, we did not find another provision that refers directly to the electoral material language issue.

[CERTIFIED TRANSLATION]

The Congress finds that, through the use of various practices and procedures, citizens of language minorities have been effectively excluded from participation in the electoral process. Among other factors, the denial of the right to vote of such minority group citizens is ordinarily directly related to the unequal educational opportunities afforded them resulting in high illiteracy and low voter participation. The Congress declares that, in order to enforce the guarantees of the fourteenth and fifteenth amendments to the United States Constitution, it is necessary to eliminate such discrimination by prohibiting these practices, and by prescribing other remedial devices.

(b) Bilingual voting materials requirement

(1) Generally

Before August 6, 2007, no covered State or political subdivision shall provide voting materials only in the English language.

(2) Covered States and political subdivisions

(A) Generally

A State or political subdivision is a covered State or political subdivision for the purposes of this subsection if the Director of the Census determines, based on census data that:

(I) more than 5 percent of the citizens of voting age of such State or political subdivision are members of a single language minority and are limited-English proficient;

(II) more than 10,000 of the citizens of voting age of such political subdivision are members of a single language minority and are limited-English proficient; or

(III) in the case of a political subdivision that contains all or any part of an Indian reservation, more than 5 percent of the American Indian or Alaska Native citizens of voting age within the Indian reservation are members of a single language minority and are limited-English proficient; and

(IV) the illiteracy rate of the citizens in the language minority as a group is higher than the national illiteracy rate.

(B) Exception

The prohibitions of this subsection do not apply in any political subdivision that has less than 5 percent voting age limited-English proficient citizens of each language minority which comprises over 5 percent of the statewide limited-English proficient population of voting age citizens, unless the political subdivision is a covered political subdivision independently from its State.

(3) Definitions

As used in this section –

(A) the term "voting materials" means registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots;

(B) the term "limited-English proficient" means unable to speak or understand English adequately enough to participate in the electoral process;

3

[CERTIFIED TRANSLATION]

(C) the term "Indian reservation" means any area that is American Indian or Alaska Native area, as defined by the Census Bureau for the purposes of the 1990 decennial census;

(D) the term "citizens" means citizens of the United States; and

(E) the term "illiteracy" means the failure to complete the 5th primary grade.

(4) Special rule

The determinations of the Director of the Census under this subsection shall be effective upon publication in the Federal Register and shall not be subject to review in any court.

(c) Requirement of voting notices, forms, instructions, assistance, or other materials and ballots in minority language

Whenever any State or political subdivision subject to the prohibition of subsection (b) of this section provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable minority group as well as the English language; Provided, That where the language of the applicable minority group is oral or unwritten or in the case of Alaskan natives and American Indians, if the predominant language is historically unwritten, the State or political subdivision is only required to furnish oral instructions assistance, or other information relating to registration and voting.

(d) Action for declaratory judgment permitting English-only materials

Any State or political subdivision subject to the prohibition of subsection (b) of this section, which seeks to provide English-only registration or voting materials or information, including ballots, may file an action against the United States in the United States District Court for a declaratory judgment permitting such provision. The court shall grant the requested relief if it determines that the illiteracy rate of the applicable language minority group within the State or political subdivision is equal to or less than the national literacy rate.

(e) Definitions

For purposes of this section, the term "language minorities" or "language minority group" means persons who are American Indian, Asian American, Alaskan Natives, or of Spanish heritage."

In view of the foregoing, in order to analyze whether a State or subdivision must comply with the voting system standards set forth in Section 301 of the HAVA Act, it must first be determined whether the election process involves a federal position. Given the fact that the General Elections held in Puerto Rico every four years include a federal position, Resident Commissioner, the answer to that question is affirmative.

Having met this first condition, we must examine whether Puerto Rico is a State "covered" by the VRA. As we have seen, the determination of whether a State is covered under Section 203 of the VRA is made by the Census Bureau Director based on the aforementioned

4

[CERTIFIED TRANSLATION]

criteria. The criteria set forth in paragraph (b) of Section 203 establish several formulas to determine whether or not a state is covered, namely: the formula of minority percentages in the voting age population; the numerical approach, which requires a particular number of members of a minority group in the voting age population and; the formula based on the existence of Indian reservations. Once the Census Bureau Director determines, based on the applicable formula, that a State is covered, his/her determination, which is not subject to judicial review by any forum or court, is published in the Federal Register and takes effect from that moment on. The obligation of the State or covered subdivision to provide an alternative language in its electoral process is activated at that point.

As we apply the foregoing, we must point out that, upon examining the most recent state of the jurisdictions covered under Section 203(b) of the VRA, published by the Census Bureau Director in the September 18, 1992 Federal Register, we notice that Puerto Rico is not included. That is, under the provisions of the Voting Rights Act; Section 1973 aa-1a Puerto Rico is not a State nor covered subdivision. The Director of the U.S. Census Bureau has not made such a determination. In other words, according to the Director of the Census, there is no language minority group that would require the application of this federal law.

Therefore, since Puerto Rico is not a "State or covered subdivision", there is no legal obligation under the provisions of the HAVA Act to provide materials in an alternative language.

We are aware that the issue of language generates great discussion in Puerto Rico. That is due to the fact that language somehow relates to the ideological postulates of the political parties. Therefore, the analysis must be strictly a matter of law. In that sense, we believe that the issue of using a second language on the electoral ballot in the general elections must be evaluated based on whether or not there is an express obligation to provide a second language under the law. We have conducted this analysis and we conclude that there is no such obligation under the law. As always, voting materials shall be provided in Spanish, in compliance with current laws. It is so ordered.

In San Juan, Puerto Rico, on this June 25th day of June 2004

REGISTER AND NOTIFY.

[illegible signature]
Aurelio Gracia Morales
President

5

[CERTIFIED TRANSLATION]

I DO HEREBY CERTIFY:

That I have served a copy of this Resolution on all the parties of interest.

If you do not agree with this Resolution, you are hereby informed that, pursuant to Art. 1.016 of the Electoral Act, you have the right to file for judicial review with the Puerto Rico Court of First Instance within ten (10) days of receiving this notice. A copy of this Resolution was filed in the records of this case on June 25, 2004.

In San Juan, Puerto Rico, on this 25th day of June 2004.

[illegible seal]          [illegible signature]
                          Ramón M. Jiménez Fuentes
                          Secretary

**[Translator's Note:** There is a set of illegible initials in the left margin of every page herein except the last one.]

---

**CERTIFICATION OF TRANSLATION**

I, Carol G. Terry, a US-Court-Certified-Interpreter and Translator with an MA in Translation from the University of Puerto Rico, hereby certify that, to the best of my knowledge and abilities, the foregoing is a true and correct translation of the original document in Spanish.

_____
Carol G. Terry

6